2020 WI App 16

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:          2019AP1176-CR

Complete Title of Case:

STATE OF WISCONSIN,

        PLAINTIFF-RESPONDENT,

    V.

RYAN C. DIEHL,

        DEFENDANT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | February 20, 2020 |
| Submitted on Briefs: | January 22, 2020 |

| | |
|---|---|
| JUDGES: | Blanchard, Graham, and Nashold, JJ. |
|     Concurred: | |
|     Dissented: | |

Appellant
ATTORNEYS:        On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven Zaleski* of *The Zaleski Law Firm*, Madison.

Respondent
ATTORNEYS:        On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael C. Sanders,* assistant attorney general, and *Joshua Kaul*, attorney general.

**2020 WI App 16**

COURT OF APPEALS
DECISION
DATED AND FILED

February 20, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1176-CR**

Cir. Ct. No. **2018CF4**

STATE OF WISCONSIN

IN COURT OF APPEALS

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

RYAN C. DIEHL,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Crawford County: LYNN M. RIDER, Judge. *Reversed and cause remanded.*

Before Blanchard, Graham, and Nashold, JJ.

¶1    GRAHAM, J. Ryan Diehl appeals a judgment of conviction for operating a motor vehicle with a prohibited alcohol concentration (PAC) and an order denying his motion for postconviction relief. Because Diehl had been

previously convicted of three or more OWI offenses,[1] the PAC that applied to him was only .02, not .08 as it is for most drivers. Diehl stipulated to his prior OWI convictions for purposes of establishing that he was subject to a .02 PAC. Therefore, consistent with *State v. Alexander*, 214 Wis. 2d 628, 571 N.W.2d 662 (1997), evidence of his prior convictions was inadmissible at trial. The prosecutor nevertheless asked multiple questions that invited the jury to infer that Diehl was a repeat offender with multiple OWI convictions.

¶2 Diehl argues that the prosecutor's questions were irrelevant and unfairly prejudicial under the circumstances and that his trial counsel was constitutionally ineffective for failing to object to them. We agree, and accordingly we vacate the conviction and remand for a new trial.

## BACKGROUND

¶3 One night in 2018, an officer pulled Diehl over because his registration was expired. The officer learned from dispatch that Diehl could not legally drive with a blood alcohol concentration of greater than .02 grams per 100 milliliters of blood. The PAC for most drivers is .08, but for Diehl it was .02 because he had eight prior OWI convictions. *See* WIS. STAT. § 340.01(46m) (2017–18).[2]

¶4 The officer noticed a 30-pack of beer in the vehicle. He asked Diehl if he had been drinking, and Diehl admitted to having two or three beers that

---

[1] In Wisconsin, the term "operating while intoxicated" or "OWI" is a general term that encompasses several types of statutory violations, including driving with a statutorily prescribed "prohibited alcohol concentration" and driving "while under the influence" of an intoxicant. WIS JI—CRIMINAL 2600.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

evening. A blood test taken almost two hours later showed a blood alcohol concentration of .031.

¶5    The State charged Diehl with violating WIS. STAT. § 346.63(1)(b), which forbids individuals from driving with a prohibited alcohol concentration. Prior to the scheduled jury trial, Diehl stipulated to his prior OWI convictions. As a result of the stipulation, and consistent with the pattern jury instructions, the jury would be asked to answer just two questions: (1) whether Diehl "drove a motor vehicle on a highway"; and (2) whether Diehl "had a prohibited alcohol concentration at the time that [he] drove the motor vehicle." WIS JI—CRIMINAL 2660C. Also consistent with the pattern jury instructions, the jury would be instructed that "[p]rohibited alcohol concentration means more than .02...." *Id.* Because Diehl stipulated to the third element of the offense, the State would not be permitted to introduce any evidence of his prior "convictions, suspensions or revocations as counted under section 343.307(1) of the Wisconsin Statutes," and the jury would not be asked to determine whether the State met its burden of proof on that element of the offense. WIS JI—CRIMINAL 2660C, n.ix. (citing ***Alexander***, 214 Wis. 2d at 646).

¶6    During trial, the prosecutor posed two sets of questions, one to the arresting officer and the other to Diehl, that are the subject of this appeal. First, during the direct examination of the officer, the prosecutor emphasized the difference between the PAC restriction that Diehl was subject to and the "normal" PAC. During this exchange, the prosecutor asked if the officer learned of any "restrictions" on Diehl's license, and the officer testified that Diehl's "blood alcohol was restricted to a .02." The prosecutor then asked the officer whether "[t]he normal is .08." After the officer confirmed that the "normal" PAC is .08, the prosecutor

repeated that Diehl "was restricted to a .02." Diehl's trial counsel did not object or take any other action in response to this questioning.

¶7 Second, during Diehl's cross-examination, the prosecutor asked repetitive questions about whether Diehl knew he was subject to a ".02 restriction." And when he denied knowledge of the restriction, the prosecutor asked about his prior convictions. This exchange proceeded as follows:

> [PROSECUTOR]: You did know that you had that .02 restriction?
>
> [DIEHL]: Actually I didn't believe I had it because I was not on probation anymore. I thought that was only for during probation.
>
> [PROSECUTOR]: So—
>
> [DIEHL]: I didn't know that.
>
> [PROSECUTOR]: You had no reason to believe you were under any restriction whatsoever?
>
> [DIEHL]: No. I didn't think—I didn't know that I had that.
>
> [PROSECUTOR]: Have you been convicted of crimes in the State of Wisconsin in the past?
>
> [DIEHL]: Yeah. Twice.
>
> [PROSECUTOR]: So you didn't know that you—at this time you didn't know that you were under any restriction?
>
> [DIEHL]: What was that?
>
> [PROSECUTOR]: At that time, January 9th, you did not understand that you were under any restriction?
>
> [DIEHL]: No. I didn't realize that I was still under that restriction.

Again, trial counsel did not object or take any other action in response to this questioning.

¶8     Diehl called an expert witness who testified, based on an analysis of alcohol absorption and elimination curves, that Diehl's blood alcohol concentration would have been below the .02 limit at the time Diehl was stopped. The prosecutor cross-examined Diehl's expert and attempted to impeach his analysis, but the State did not present any absorption curve analysis of its own.

¶9     The jury returned a guilty verdict, and postconviction counsel moved for a new trial on grounds that trial counsel was ineffective for failing to object to the prosecutor's irrelevant questioning. Trial counsel testified at the **Machner** hearing[3] that he was unable to recall any strategic reason for not objecting. The circuit court denied Diehl's motion for a new trial, and Diehl appeals.

## DISCUSSION

¶10     To prevail on a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the defendant suffered prejudice as a result. **Strickland v. Washington**, 466 U.S. 668, 687 (1984).[4] Before addressing whether Diehl has met these standards, we review **State v. Alexander**, the seminal Wisconsin Supreme Court opinion regarding the relevance, probative value, and risk of unfair prejudice that is posed by evidence of prior OWI convictions in repeat OWI prosecutions like this. We then address whether Diehl

---

[3] *See* **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App.1979).

[4] An ineffective assistance of counsel claim presents a mixed question of fact and law. **State v. Thiel**, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305. Findings of fact include "the circumstances of the case and the counsel's conduct and strategy" and will be upheld unless clearly erroneous. **State v. Knight**, 168 Wis. 2d 509, 514 n.2, 484 N.W.2d 540 (1992). "Whether counsel's performance satisfies the constitutional standard for ineffective assistance of counsel is a question of law," which we review de novo. **Thiel**, 264 Wis. 2d 571, ¶21. The parties identify no relevant findings of fact in dispute, and therefore we approach this appeal as involving questions of law.

has shown that his trial counsel's failure to object to the challenged questions was constitutionally ineffective.

## I. *State v. Alexander*

¶11    In *Alexander*, like here, the defendant was subject to a lower PAC as a result of prior OWI convictions.[5]  214 Wis. 2d at 633-34.  At that time, the third element of the offense was whether the defendant had "two or more convictions, suspensions or revocations as counted under section 343.307(1) of the Wisconsin Statutes."  *Id.* at 638.  The *Alexander* court referred to this element as the "status element" of the offense since its sole purpose was to place the defendant in a "certain category of alleged offenders" with a lower PAC than other drivers.  *Id.* at 644.  The defendant offered to stipulate to the status element, and then argued that there was no longer any reason for the jury to be exposed to evidence about his prior convictions.  *Id.* at 637.  He asked the court to bar the State from introducing such evidence, and also to modify the standard verdict form so that the jury would not be asked to decide the status element.  *Id.*  The circuit court accepted the stipulation but refused to take the question about the status element from the jury.  *Id.* at 637-38.  Accordingly, the court instructed the jury that the parties were stipulating to the status element, and the verdict form asked the jury whether the defendant had "two or more convictions, suspensions or revocations as counted under section 343.307(1) of the Wisconsin Statutes."  *Id.* at 638.

---

[5] At the time of the arrest in *Alexander*, the PAC for most Wisconsin drivers was .10, and the PAC for drivers with two or more prior OWI convictions was .08.  *See* WIS. STAT. § 340.01(46m) (1993-94); *State v. Alexander*, 214 Wis. 2d 628, 647, 571 N.W.2d 662 (1997).  Since that time, the legislature has enacted stricter standards.  *See, e.g.*, 1999 Wis. Act 109 (establishing a PAC of .02 for drivers with three or more prior OWI convictions).

¶12     On appeal, the Wisconsin Supreme Court acknowledged that the prior convictions were unquestionably relevant in determining the defendant's legal status—that is, the PAC that applied to him. *Id.* at 644. But the court concluded that the defendant "dispenses with the need for proof of the status element" by stipulating to the prior convictions, *id.* at 646, and that apart from proving his PAC status, evidence of his prior convictions has "no probative value," *id.* at 645.[6]

¶13     In cases like this, the court explained, it is "highly probable" that the jury, when told that a defendant had prior convictions, suspensions, or revocations that counted under a particular section of the Wisconsin Statutes, will infer that the multiple prior convictions were OWI offenses. *Id.* at 644. Further, that inference would impermissibly lead the jurors to think that the defendant has a "propensity to drink and drive" and was "probably driving while intoxicated on the date in question." *Id.* at 650. As the court explained, the danger is that the jury will base its verdict on the improper propensity inference and convict, even if the State has not met its burden of proof on each element of the charged offense. *Id.* at 651-52. This danger is so great that it may not be adequately cured by a limiting instruction. *Id.* at 643. Accordingly, once a defendant stipulates to his or her prior OWI convictions, any probative value of evidence of those convictions is "substantially outweighed by the danger of unfair prejudice," and a circuit court erroneously exercises its discretion by admitting such evidence. *Id.* at 651.

¶14     In the wake of *Alexander*, the criminal jury instruction committee modified the standard jury instructions and verdict. *See* WIS JI—CRIMINAL 2600,

---

[6] The *Alexander* court rejected the argument that the prior convictions must be explained to the jury because otherwise, if the jury is not told *why* the defendant has a lower PAC than most drivers, the jury may be "puzzled." *State v. Alexander*, 214 Wis. 2d at 646-47. As the court explained, "if the jury is instructed [on the applicable prohibited alcohol concentration], it is presumed that they will follow that instruction," and the State had provided no evidence for its assertion that the "usual prohibited alcohol concentration" is common knowledge. *Id.* at 647.

7

pt. VI.A. The committee included extensive notes to the instructions explaining the *Alexander* case and why evidence of OWI convictions presents a unique risk of unfair prejudice in a repeat OWI case like this where the defendant stipulates to the prior convictions. *See id.*; WIS JI—CRIMINAL 2660C, n.ix.

## II. Deficient Performance

¶15 Trial counsel's failure to object to irrelevant and unfairly prejudicial questioning may constitute deficient performance, provided that counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688; *Martin v. Grosshans*, 424 F.3d 588, 591 (7th Cir. 2005) (failure to make the proper objections to irrelevant and unfairly prejudicial evidence may be deficient performance). To determine whether counsel's performance was deficient, we first examine whether counsel could have objected to the prosecutor's questioning on relevance and unfair prejudice grounds. After concluding that he could have, we then evaluate the arguments about whether counsel was constitutionally deficient for failing to do so.

### A. Relevance

¶16 "Relevant evidence" is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." WIS. STAT. § 904.01. Irrelevant evidence is not admissible. WIS. STAT. § 904.02. As mentioned above, the jury in this case was asked to answer just two questions: (1) whether Diehl drove a motor vehicle on a highway; and (2) whether his blood alcohol concentration at that time was greater than .02. And as the State acknowledges, the only question that was subject to any dispute was whether

8

Diehl's blood alcohol concentration was "above or slightly below 0.02" at the time he was driving.

¶17    We agree with Diehl that much of the challenged questioning and testimony is not relevant because it did not have any tendency to make any fact of consequence more or less probable.  To be sure, the fact that Diehl's PAC was .02 was relevant, since the jury would have to find that his blood alcohol concentration exceeded that standard to convict him.[7]  *See State v. Krancki*, 2014 WI App 80, ¶20, 355 Wis. 2d 503, 851 N.W.2d 824.   However, the challenged questioning and testimony also relates to two other topics:  whether Diehl's PAC was *lower than the "normal" PAC*, and whether he was *aware* that he was subject to a PAC restriction. Neither of these topics is relevant.  Evidence of the "normal" PAC does not make it more or less probable that Diehl drove with a blood alcohol concentration above .02.  And evidence of Diehl's knowledge or lack of knowledge of any restriction that applied to him could have no bearing on the jury's verdict, since intent is not an element of an OWI charge.

¶18    The State makes three arguments in an attempt to show how the challenged questioning and testimony could be relevant, but none are persuasive. First, the State argues that evidence that Diehl's PAC was lower than "normal" was relevant to explain why the arresting officer "suspected Diehl might have driven with a prohibited alcohol concentration, why he requested a [preliminary breath test], and why he arrested Diehl."  This argument fails because the arresting officer's

---

[7] As noted above, because Diehl had stipulated to his prior OWI convictions, there was no dispute about the applicable standard, and the jury was simply instructed that the PAC was .02.  *See Alexander*, 214 Wis. 2d at 646 (by stipulating to prior OWIs, "the defendant has given up his right to a trial" on the PAC that applied to him); *id.* at 647 ("If the jury is instructed [as to the defendant's PAC], it is presumed that they will follow that instruction.").

9

reasons for suspecting Diehl had no bearing on the two questions the jury was asked to answer.

¶19     Second, the State argues that the evidence was offered "for the permissible purpose of providing background and context and to give a complete account of the situation." But the State makes no discernable argument to explain why the jury needed "context" about the fact that Diehl's PAC was "restricted" and lower than the "normal" PAC. As *Alexander* explains, "the prosecution's need for 'evidentiary depth to tell a continuous story has … virtually no application when the point at issue is a defendant's legal status, dependent on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him.'" 214 Wis. 2d at 649 (quoting *Old Chief v. United States*, 519 U.S. 172, 188 (1997)).

¶20     Finally, the State asserts without explanation that "it was appropriate to ask Diehl if he was aware that he was subject to the .02 standard." As we have explained, intent is not an element of the charged crime. Even if we credited the argument that it was somehow appropriate to ask the officer to distinguish between the restriction that applied to Diehl and the "normal" PAC, that argument would not apply to questions about whether he *knew* his PAC was "restricted." The questions posed to Diehl plainly called for irrelevant testimony.[8]

---

[8] The questions were also repetitive. The prosecutor asked the same question—did Diehl know that his PAC was "restricted"?—four times, effectively driving this irrelevant point home to the jury.

## B. Danger of Unfair Prejudice

¶21　We now turn to whether the prosecutor's questions and the answers they elicited were unfairly prejudicial. Even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." WIS. STAT. § 904.03.[9] Since we have concluded that the testimony was not relevant, it had no probative value. It also posed a great danger of unfair prejudice for reasons we now explain. *See Alexander*, 214 Wis. 2d at 651.

¶22　When it comes to the danger of unfair prejudice, the "nature of the drunk driving offense and the social stigma attached to it" makes repeat OWI prosecutions "unique." *State v. Warbelton*, 2009 WI 6, ¶¶45, 46, 315 Wis. 2d 253, 759 N.W.2d 557. In these cases, if the jury infers that a defendant has multiple prior OWI convictions, this presents an "extremely high" risk of unfair prejudice for three reasons:

> First, upon learning that the defendant has prior convictions, suspensions, or revocations, jurors are likely to infer that these prior offenses were also for drunk driving—precisely the same offense the defendant is charged with now. Second, upon learning that the defendant had multiple prior offenses, jurors are likely to infer that the current charge is part of a pattern of behavior—that is, that the defendant habitually drives while intoxicated. Third, given the defendant's probable habit of driving while intoxicated, jurors might conclude that even if the defendant is not guilty on the particular occasion charged, the defendant likely

---

[9] At times, Diehl's brief characterizes the challenged testimony as "other acts" evidence. *See* WIS. STAT. § 904.04(2)(a) (evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith"); *Hart v. State*, 75 Wis. 2d 371, 395, 249 N.W.2d 810 (1977) ("[A]s a general rule … receipt of evidence of the defendant's bad character or commission of specific disconnected acts is prejudicial error."). The State argues that the challenged testimony was not "other acts" evidence. We need not decide whether the challenged testimony is properly characterized as "other acts" evidence governed by § 904.04(2), since the concern about other acts evidence is that the jury will convict based on an unfairly prejudicial character inference, and any evidence that creates a "danger of unfair prejudice" can also be excluded under WIS. STAT. § 904.03.

> committed the same offense on many other occasions without being caught.

*Id.*, ¶¶46, 47. As a result of the propensity inferences that the jury is likely to make, "the jury is likely [to] convict, even if there is not persuasive proof that the defendant is guilty of the instant charge." *Id.*, ¶47.

¶23 Diehl persuasively explains why the jury would have understood that he had multiple prior OWI convictions as a result of the irrelevant questioning in this case. The direct examination of the arresting officer came first, and it emphasized that Diehl's legal status was different from most people's. The jury would naturally wonder why Diehl's PAC was lower than "normal," and the prosecutor's cross-examination of Diehl later supplied the answer by definitively linking the restriction to his prior convictions.

¶24 In response to an initial question about whether Diehl knew his PAC was "restricted," Diehl explained that he was "not on probation anymore," and that he thought the restriction was in place "only ... during probation." The prosecutor repeated his question and then asked Diehl if he had been convicted of any crimes. Diehl answered "Yeah. Twice," and the prosecutor immediately followed up with: "So you didn't know that you—at this time you didn't know that you were under any restriction?" This exchange raises the obvious inference that the reason Diehl was subject to a "restriction" was his prior convictions. And jurors with even a basic understanding of Wisconsin's OWI laws would have understood that the prior convictions were probably OWIs. *See Alexander*, 214 Wis. 2d at 644 (in an OWI case, when the jury is informed that the defendant's prior convictions cause him to have a lower PAC than other drivers, it will likely infer the prior convictions are OWI offenses).

¶25    We acknowledge that the evidence that was determined to be unfairly prejudicial in *Alexander* is a variation on the evidence at issue in this case. In *Alexander*, the unfairly prejudicial evidence was a stipulation that the defendant had prior "convictions, suspensions, or revocations as counted under section 343.307(1) of the Wisconsin Statutes." 214 Wis. 2d at 638. Here, by contrast, the prosecutor's questions and the resulting testimony appeared to invite the jury to infer that Diehl had such prior convictions. Despite this difference, the danger of unfair prejudice is the same. In both cases, the inference that the defendant has multiple prior OWI convictions communicates to jurors "that the defendant has had a problem in the past, probably with drinking and driving," *Alexander*, 214 Wis. 2d at 650, that "the current charge is part of a pattern of behavior," and that "even if the defendant is not guilty on the particular occasion charged, the defendant likely committed the same offense on many other occasions without being caught," *Warbelton*, 315 Wis. 2d 253, ¶47.

¶26    The State makes a number of arguments in an attempt to show that this questioning was not unfairly prejudicial. Many of these arguments focus on isolated portions of the trial transcript and fail to read these portions in context. All of the State's arguments fail for reasons we now explain.

¶27    First, the State argues that questioning Diehl about the "restriction" on his license was proper because all Wisconsin drivers are subject to the "restriction" that they may not drive with a prohibited alcohol concentration. But, it's apparent from the context of the prosecutor's questions that "restriction" meant Diehl's lower-than-normal .02 PAC.

¶28    Second, the State contends that "it was not the prosecutor's fault that Diehl decided to tell the jury that he had been on probation." Even if true, this

would not be material to our inquiry. The question before us relates to the performance of defense counsel, not the performance of the prosecutor or the defendant as a witness on the stand. Further, the prosecutor's questioning *did* provoke Diehl's response. The prosecutor's irrelevant questions about whether Diehl was "aware" of his PAC restriction invited the testimony that Diehl predictably gave about the reason *why* his PAC was restricted.

¶29 Third, the State points out that the prosecutor did not specifically ask if Diehl had been convicted "of any OWI-related offenses," and it contends that the prosecutor was allowed to impeach Diehl by asking about his prior crimes. *See* WIS. STAT. § 906.09 (for impeachment purposes, "a witness may be asked whether the witness has ever been convicted of a crime … and the number of such convictions," but not the nature of those convictions). Although it is proper to ask about the number of a testifying defendant's prior convictions for impeachment purposes, the State's argument ignores the context in which the question was asked. The State asserts that "the prosecutor's questions did not imply that Diehl's two convictions were for OWI,"[10] but for reasons already explained, we are not persuaded. Although the prosecutor did not explicitly ask Diehl whether his prior convictions were for OWI-related offenses, that is the unmistakable inference that the prosecutor's questions raised. *See supra* ¶¶23-24.

¶30 Fourth, the State argues that Diehl got "a break" since he actually had ten prior convictions, significantly more than the two he acknowledged during

---

[10] The State cites language in the circuit court's oral ruling for this conclusion, but we review legal questions independently of the circuit court. The court simply stated that it did not "believe" the defense had proven that the jury thought that the two prior convictions were OWI convictions, but the court offered no specific reasoning on this point.

cross-examination.[11] But even if Diehl's testimony in response to the impermissible questioning might have been *more* prejudicial, that does not mean that the testimony he gave was free from unfair prejudice.

¶31 Finally, the State argues that any inference that Diehl "has a propensity to drive drunk" would not have been prejudicial because Diehl was not charged with "drunk driving" in this case. As we understand this argument, it relates to the fact that Diehl was not charged under WIS. STAT. § 346.63(1)(a), which requires proof of impairment, but under § 346.63(1)(b), which does not. The State offers no persuasive argument as to why this would matter. The essence of the PAC offense Diehl was charged with is that he drove a motor vehicle with too much alcohol in his system. The inference that Diehl had legal problems in the past that arose from drinking too much and driving is unfairly prejudicial, regardless of the type of OWI offense he was charged with in this case. *See Alexander*, 214 Wis. 2d at 650 (in OWI cases, evidence of prior OWI convictions raises "an inference that the defendant has … a propensity to drink and drive, and that is the very result prohibited by the rules of evidence").

¶32 For the reasons stated above, we conclude that the challenged questioning was not relevant and created a risk of unfair prejudice. We further conclude that if trial counsel had objected to this questioning, the circuit court should have sustained the objection based on the rationale set forth in *Alexander* and based on the rules of evidence. *See Alexander*, 214 Wis. 2d at 651 ("admitting any evidence of the defendant's prior convictions, suspensions or

---

[11] As the circuit court explained during the *Machner* hearing, Diehl was allowed to omit all OWI convictions when counting his prior offenses for purposes of WIS. STAT. § 906.09. *See* § 906.09(2) (the court may allow a defendant not to count a conviction when its "probative value is substantially outweighed by the danger of unfair prejudice").

15

revocations ... was an erroneous exercise of discretion"); WIS. STAT. § 904.02 (irrelevant evidence is not admissible); WIS. STAT. § 904.03 (evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice").

## C. Trial Counsel's Performance

¶33 We turn to whether trial counsel's failure to object or take any other action in response to the questioning was deficient performance. When addressing this question, we are mindful of the presumption that counsel's decisions "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Courts "will not second-guess a reasonable trial strategy unless it was based on an irrational trial tactic or … caprice rather than upon judgment." *State v. Breitzman*, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93.

¶34 The State argues that trial counsel's failure to object could have been based on reasonable trial strategy, since an objection to questions about the difference between Diehl's PAC and the "normal" PAC might have drawn "unwanted jury attention" to the issue. During the *Machner* hearing, trial counsel did not identify a concern about unwanted jury attention—or any other concern—as the reason that he did not object. Nevertheless, we may "rely on reasoning which trial counsel overlooked or even disavowed." *State v. Koller*, 2001 WI App 253, ¶8, 248 Wis. 2d 259, 635 N.W.2d 838.

¶35 The State's argument might be plausible if Diehl were only challenging trial counsel's failure to object to the questioning of the arresting officer. Those questions, which were relatively brief, asked about the difference between Diehl's PAC and the "normal" PAC. At that point, an objectively reasonable attorney might have judged that it would be a mistake to object in front

16

of the jury, thereby calling attention to the issue. But as we have explained, Diehl also argues that trial counsel should have objected to the prosecutor's questions to Diehl, and the State offers no argument explaining how counsel's failure to take any steps to prevent that questioning could be based on reasonable trial strategy.

¶36 A reasonably competent attorney defending a repeat OWI charge would have been aware of *Alexander* and would have been concerned about the extremely high danger of unfair prejudice posed by an inference of prior OWI convictions. Even if trial counsel had a reasonable strategic reason for not objecting to the questions asked of the arresting officer, that questioning should have alerted counsel that the prosecutor was entering dangerous territory by asking questions that would raise the inference of prior OWI convictions. Under those circumstances, a reasonably competent attorney would have understood the risk of unfair prejudice, and would have taken steps to prevent any further such testimony. For example, counsel could have requested a side bar outside the jury's presence and brought the concern to the court's attention. Counsel also could have been ready to object if further such questioning occurred.

¶37 We conclude that trial counsel should have, at minimum, objected to the prosecutor's questions to Diehl, because those questions were irrelevant, repetitive, and posed an obvious risk of unfair prejudice to his client. Although there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, Diehl has overcome this presumption because trial counsel failed to object to irrelevant and prejudicial questions despite having multiple good reasons to do so. Accordingly, we conclude that Diehl has shown that trial counsel's performance fell below an objective standard of reasonableness.

17

### III. Prejudice[12]

¶38 We now consider whether Diehl has shown a "reasonable probability" that, absent counsel's errors, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The defendant need not show with certainty that the errors influenced the outcome; rather, "[t]he focus is on the reliability of the proceedings." *State v. Pitsch*, 124 Wis. 2d 628, 642, 369 N.W.2d 711 (1985); *see also Strickland*, 466 U.S. at 687. We have already determined that, due to trial counsel's errors, the jury heard testimony raising the unfairly prejudicial inference that Diehl had prior OWI convictions. We now consider whether the error was great enough to undermine the reliability of the proceedings.

¶39 As discussed above, the only disputed issue at trial was whether Diehl's blood alcohol concentration was "above or slightly below 0.02" at the time he was driving. If the State had provided strong evidence that Diehl's blood alcohol concentration was above the legal limit at the time he was stopped, Diehl might not be able to carry his burden of showing the impermissible propensity inference undermines confidence in the reliability of the proceeding. *Cf. Alexander*, 214 Wis.2d at 653-54 (erroneous admission of prior OWI convictions could not have contributed to the conviction since there was overwhelming evidence that the defendant's blood alcohol concentration was three times over the legal limit).

---

[12] Because the term "prejudice" refers to two related but distinct concepts in this opinion, we emphasize that the prejudice discussed in this section differs from the "unfair prejudice" discussed above. Whether certain evidence is "unfairly prejudicial" under WIS. STAT. § 904.03 turns on whether the evidence would impermissibly affect the jury's perception of the facts. By contrast, whether there is prejudice for the purposes of the constitutional test for ineffective assistance of counsel turns on the overall impact trial counsel's errors had on the reliability of the proceedings. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶40    We recognize that .02 is a low blood alcohol concentration, and in many cases, the quantum of proof needed to show that a defendant was above that limit will be readily satisfied. Here, however, it is not clear that the evidence favored the State. It was undisputed that when Diehl's blood was drawn almost two hours after the stop, his blood alcohol concentration was .031, only marginally above his legal limit. Although the State's forensic toxicologist testified about the process she used to determine the alcohol concentration in the sample of Diehl's blood, she was not asked about what it would have been at the time of his arrest. Only Diehl's expert witness addressed this question, and he testified that Diehl's blood alcohol concentration at that time was likely below .02. Diehl's expert based his analysis on his understanding of the drinks that Diehl had consumed and research about the rate at which human bodies generally process alcohol. He opined that there had not been sufficient time for Diehl's body to absorb enough alcohol to bring his blood alcohol concentration up to .02 at the time he was stopped.

¶41    The State argues that the jury would have convicted Diehl regardless of any unfair prejudice because the jury could not have believed Diehl's expert witness. We disagree. To be sure, the State points to weaknesses in the expert's testimony, most significantly the fact that the expert's calculations assumed Diehl drank beer with an alcohol concentration of 4.2% when Diehl testified that he drank "full strength" 5.0% beer. Diehl's expert was questioned about this discrepancy on cross-examination, and he testified that the difference was too minor to impact his calculations. Though this discrepancy may have weakened Diehl's defense, it did

not render it inherently unbelievable.[13]  This is particularly true in light of the fact that Diehl's expert also based his calculations on the "worst case" assumption that Diehl drank three beers, even though Diehl testified at trial that he drank only two.

¶42    Our conclusion is consistent with the view of the circuit court, which explained:  "I recall thinking the Jury could go either way in this case …."  Diehl had a credible defense to the charge, and the jury had to evaluate the evidence and decide whether the State had met its burden to prove each element beyond a reasonable doubt.  The unfair prejudice resulting from the inference that Diehl had prior OWI convictions could have easily tipped the balance in the State's favor.  For example, the jury could have concluded that a repeat OWI offender was more likely to lie about matters related to drinking and driving, or it could have resolved close questions in the State's favor because Diehl's multiple OWI convictions meant he was "a bad person [who] deserves punishment."  *Alexander*, 214 Wis. 2d at 643.  The jury could also have concluded that Diehl "likely committed the same offense on many other occasions without being caught," and therefore may have convicted Diehl despite being unconvinced that there was "persuasive proof" he was guilty on the night in question.  *Warbelton*, 315 Wis. 2d 253, ¶47.

¶43    These potential effects undermine our confidence in the reliability of the proceedings.  Accordingly, we conclude that there is a "reasonable probability" that, absent trial counsel's errors, "the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

---

[13] In its brief, the State attempts to rework the expert's calculations to account for the difference between light and "full strength" beer.  We do not consider whether the State's calculations are sound, since they were not presented to the jury and therefore do not address the salient question, which is whether, based on the evidence provided, the jury necessarily disbelieved Diehl's expert.

**CONCLUSION**

¶44    For the reasons above, we conclude that Diehl has shown that his trial counsel's performance was deficient and prejudicial.  Accordingly, we reverse and remand for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded.