**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 18, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2025AP184-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2022CF60

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

RONALD J. ROGERS,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Vernon County: DARCY JO ROOD and LUKE STEINER, Judges. *Affirmed*.

Before Blanchard, Kloppenburg, and Nashold, JJ

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Ronald Rogers appeals a judgment of conviction for operating under the influence of an intoxicant as an eighth offense and an order

denying his postconviction motion for a new trial.[1]  Rogers argues that he received ineffective assistance of counsel when his trial counsel failed to object to testimony suggesting that he was subject to a prohibited alcohol concentration of 0.02 grams per 100 milliliters, which is lower than the concentration prohibited for a person without prior convictions.  He also argues that the circuit court erred in admitting the results of his blood test because, according to Rogers, the State failed to comply with WIS. STAT. § 343.305(5)(b) (2023-24),[2] which lists the medical personnel authorized to draw blood from a person arrested for OWI.  We conclude that Rogers has not shown prejudice from any possible error of trial counsel or that the State failed to comply with the statutory requirements for a blood draw.  Therefore, we affirm.

## BACKGROUND

¶2      The State charged Rogers with operating while under the influence of an intoxicant (OWI) and operating with a prohibited alcohol concentration (PAC), both as eighth offenses.  At trial, the officer who arrested Rogers testified that he stopped Rogers's vehicle one night in 2022 after noticing that the vehicle had no taillights.  As the officer approached the vehicle, he saw Rogers light a cigarette, which past experience suggested to him is "usually an indicator that something is going on."  The officer noticed Rogers's "glossy red eyes" and asked Rogers whether he had been drinking.  Rogers responded that he had two or three drinks "within the hour."

---

[1] The Honorable Darcy J. Rood presided over the trial and entered the judgment of conviction.  The Honorable Lukas Steiner entered the order denying Rogers's postconviction motion.

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

2

¶3      The officer testified that after this initial conversation and obtaining Rogers's identification, he checked Rogers's driving record as part of the routine protocol of a traffic stop.  The prosecutor then elicited the following testimony:

> Q. And what information, if any, did you gather from that?
>
> A. Came back with a restriction on his – of a .02 for him to operate.
>
> Q. Is that significant to you?
>
> A. It is, yes.
>
> Q. Why?
>
> A. If I was detecting possible impairment, I know they have a lower threshold [than] I normally do for a person; I need to investigate that.

¶4      Despite a pretrial ruling by the circuit court granting Rogers's motion to exclude all references to prior OWI convictions as unduly prejudicial, defense counsel did not object to this testimony.[3]  The officer went on to testify that he returned to Rogers's vehicle and asked Rogers to get out and perform field sobriety tests.  The officer noticed that, when Rogers exited the vehicle, the "odor was much stronger than it was when [the officer] first went up to the window."  Rogers exhibited six out of six possible clues indicative of intoxication on the horizontal gaze nystagmus test.  Rogers informed the officer that medical issues with his knees could affect his balance, and he struggled to follow directions and to maintain balance on the walk and turn test.  The officer testified that the

---

[3] *See **State v. Alexander**, 214 Wis. 2d 628, 644-45, 571 N.W.2d 662 (1997) (stating that when a defendant stipulates to prior OWI convictions, any probative value of evidence of those convictions is outweighed by danger of unfair prejudice and therefore the jury should not learn of the convictions).

balancing issues "may" have been due to Rogers's knee problems. The State presented video from the officer's body camera showing Rogers's difficulty following instructions.

¶5    The officer then testified that he arrested Rogers and, when searching his vehicle, found a grocery bag containing a six-pack of beer on the front seat next to Rogers. Three of the cans were missing, and the remaining three "were cold to the touch, which mean[t] they were recently taken out of a cooler."

¶6    Rogers consented to a blood draw after being read the Informing the Accused form. The officer testified that the kit used for this blood draw was stored at the hospital where the draw occurred and the kit was sealed, with no apparent evidence of tampering. When asked whether a phlebotomist drew the blood, the officer responded, "Yes, a professional." The officer further testified that he observed Rogers's blood being drawn and responded "[y]es" to the question of whether he "observe[d the] phlebotomist collect the vials and place them in the blood draw kit."

¶7    The forensic scientist at the Wisconsin State Laboratory of Hygiene who tested Rogers's blood sample also testified. He confirmed that the sample was sealed when it was received by the hygiene lab and that there was no evidence of tampering. After testing, he determined that Rogers's blood sample contained 0.150 grams of ethanol per 100 milliliters. On cross-examination, Rogers questioned whether yeast contamination could cause fermentation and increase the amount of ethanol in the sample. The scientist explained that, based on his review of the studies on this topic, increases in ethanol concentration would be detected only when blood samples were purposely inoculated with large amounts of yeast.

¶8      After the forensic scientist's testimony, the circuit court made a record of Rogers's objections to the admissibility of the blood test results. Defense counsel confirmed that one objection was based on the State's failure to lay a proper foundation because "there was no testimony from … the phlebotomist, the individual who drew the blood." The court overruled that objection, noting that the arresting officer "testified that he got the kit, he observed the phlebotomist draw the blood," and "observed this from start to finish." Rogers's other objection was that the officer failed to comply with WIS. STAT. § 343.305(5)(b), which provides that only certain specified medical professionals are authorized to draw blood from a person arrested for OWI. The court also overruled this objection.

¶9      The jury found Rogers guilty of OWI and PAC, which was defined as operating with "more than .02 grams of alcohol in 100 milliliters of the person's blood." The circuit court dismissed the PAC charge "by operation of law" and sentenced Rogers on the OWI conviction.

¶10      In his postconviction motion, Rogers argued to the circuit court that trial counsel was ineffective by failing to object to the arresting officer's testimony regarding Rogers's 0.02 PAC, particularly the testimony that it was "significant" and "lower [than he] normally ha[d] for a person." Rogers also argued that the court erred in overruling his objection to admission of the blood test results based on WIS. STAT. § 343.305(5)(b).

¶11      The circuit court conducted a *Machner*[4] hearing at which trial counsel testified. Counsel agreed that the officer's testimony "implie[d] to the

_____

[4] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

5

jury that [Rogers] ha[d] prior convictions for operating while intoxicated," because that would be "why he has a lower prohibited alcohol content." Counsel testified that counsel had no strategic reason for not objecting to the testimony.

¶12     The circuit court denied Rogers's postconviction motion. As to the issue of prior convictions, the court concluded that the main case relied upon by Rogers—*State v. Diehl*, 2020 WI App 16, 391 Wis. 2d 353, 941 N.W.2d 272—does not stand for the proposition that a 0.02 PAC "must be wholly ignored." To the contrary, the court stated, it is an element of the offense. The court acknowledged that the officer's discovery of Rogers's 0.02 PAC status was made in connection with checking Rogers's record, and therefore might "insinuate that the driving record is the reason for a 0.02 restriction," but the court then determined that the failure to object was not deficient performance because there existed an objectively reasonable reason to not object to this testimony, even if it was not trial counsel's actual reason: to avoid "clarify[ing] what may remain unclear to the jury," that the lower PAC is the result of prior OWI convictions. Rogers appeals, renewing his arguments with respect to both ineffective assistance of trial counsel and WIS. STAT. § 343.305(5)(b).

## DISCUSSION

### A.  Ineffective Assistance of Counsel

¶13     To succeed on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's errors were prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one. *See id.* at 697. We will assume, without deciding the issue, that Rogers's trial counsel performed deficiently when

he failed to object to the officer's testimony about Rogers's PAC at trial. Therefore, the first prong of the test is assumed to be satisfied, and we turn to the second prong addressing prejudice. *State v. Maday*, 2017 WI 28, ¶57, 374 Wis. 2d 164, 892 N.W.2d 611.

¶14 To satisfy the prejudice component of the test for ineffective assistance of counsel, the defendant must affirmatively prove that the alleged defect in counsel's performance had an adverse effect on the defense. *Strickland*, 466 U.S. at 693. It is not enough merely to show that the error had some conceivable effect on the outcome. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. When determining if counsel's deficiency undermines confidence in the outcome of the trial and amounts to prejudice, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695.

¶15 We are not persuaded that, absent trial counsel's assumed deficiency, there is a reasonable probability that the result of Rogers's trial would have been different. In this respect, the facts of Rogers's case are markedly different from those in *Diehl*, a case that Rogers relies on in which this court concluded that the defendant was entitled to a new trial based on counsel's failure to object to testimony about the defendant's 0.02 PAC. *See Diehl*, 391 Wis. 2d 353, ¶2.

¶16 First, in *Diehl*, the State elicited testimony about the defendant's restrictions on his license from both the arresting officer and the defendant. *Id.*, ¶6. The prosecutor asked several questions of the arresting officer that

emphasized the difference between the defendant's "restricted" 0.02 PAC and the "normal" PAC of 0.08. *Id.* The prosecutor's "repetitive" questions to the defendant were directed to whether the defendant knew he was subject to a ".02 restriction," which—like the testimony about a "normal" PAC from the arresting officer—was not relevant to the only questions before the jury: whether the defendant drove a motor vehicle on a highway and whether he had a prohibited alcohol concentration at the time that he drove. *Id.*, ¶¶5, 7, 17. In addition, the prosecutor impeached the defendant with evidence of prior convictions and elicited testimony from him that he had been on probation. *Id.*, ¶7.

¶17　At Rogers's trial, by contrast, the objectionable questioning was not extensive. Although the arresting officer testified that Rogers had a "restriction" of ".02 for him to operate" which is "a lower threshold," the prosecutor did not belabor a contrast between Rogers's PAC and a normal PAC, elicit testimony about what a normal PAC is, or ask repetitive questions. Rogers did not testify, and there was no testimony about his prior convictions or probationary status that would have strengthened any inference that his PAC was the result of prior OWI convictions.

¶18　Second, we pointed out in *Diehl* that "[i]f the State had provided strong evidence that Diehl's blood alcohol concentration was above the legal limit at the time he was stopped, Diehl might not be able to carry his burden of showing the [prejudice resulting from the failure to object to the PAC testimony] undermines confidence in the reliability of the proceeding." *Id.*, ¶39. Diehl's blood test, conducted with blood drawn almost two hours after he was pulled over, showed a concentration of 0.031 grams per 100 milliliters. *Id.*, ¶40. Diehl's defense at trial was that his blood alcohol concentration was "likely" below 0.02 grams per 100 milliliters when he was driving. *Id.* What this court deemed a

"credible defense" was supported by Diehl's expert witness, who testified that, based on the human body's rate of processing alcohol and his understanding of the drinks Diehl had consumed, there had not been sufficient time for Diehl's body to absorb enough alcohol to result in a blood alcohol concentration over 0.02 at the time Diehl was stopped. *Id.*, ¶¶40-42.

¶19    Here, the State offered much stronger evidence against Rogers, and Rogers's defense was much less compelling. In addition to a blood test showing 0.150 grams of ethanol per 100 milliliters—more than seven times Rogers's allowable blood alcohol level—the State introduced testimony about Rogers's other signs of impairment and video footage of Rogers's unsuccessful attempts to follow directions for field sobriety tests. The arresting officer also testified that Rogers admitted to drinking several alcoholic drinks "within the hour" and that the six-pack of beer found in the front seat next to Rogers was cold, suggesting that it had recently been taken from some form of refrigeration, with three cans missing. Unlike the "credible defense" in *Diehl*, Rogers's defense consisted primarily of the unsupported theory that his blood sample could have been contaminated by yeast that could have fermented and resulted in an erroneously high alcohol concentration result.[5] *See id.*, ¶42. Given the forensic scientist's testimony that there was no indication of tampering or contamination in Rogers's blood sample and that the studies on this topic suggested that an elevated result was possible only in samples purposely inoculated with large amounts of yeast, this was not a particularly "credible defense" or one that would have a reasonable probability of

_____

[5] Rogers also argued that his knee issues contributed to his inability to perform field sobriety tests.

succeeding absent the objectionable testimony. We conclude that Rogers has failed to satisfy the prejudice prong of the *Strickland* test.

## B. WISCONSIN STAT. § 343.305(5)(b)

¶20 Next, we address Rogers's argument that the circuit court erred in admitting his blood test result based on the State's alleged failure to demonstrate that the person who drew Rogers's blood was authorized to do so under WIS. STAT. § 343.305(5)(b). We review a circuit court's decision on whether to admit evidence for an erroneous exercise of discretion. *State v. Warbelton*, 2009 WI 6, ¶17, 315 Wis. 2d 253, 759 N.W.2d 557. We will reverse such a decision if the court bases its decision on a misstated fact or an incorrect legal standard. *Id.* The interpretation of a statute, in this case the statute setting forth the legal standards for blood draws in OWI cases, presents a legal question that we independently review. *See State v. Reitter*, 227 Wis. 2d 213, 223, 595 N.W.2d 646 (1999). "Statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted).

¶21 WISCONSIN STAT. § 343.305(5)(b) states that "[b]lood may be withdrawn from the person arrested … only by a physician, registered nurse, medical technologist, physician assistant, phlebotomist, or other medical professional who is authorized to draw blood." This unambiguously conveys that a phlebotomist is an authorized medical professional who may draw the blood of a person arrested in an OWI case. Rogers asserts that the testimony presented by the State at this trial was too "brief and vague" to establish that the person who drew his blood was statutorily authorized to do so.

¶22 While the testimony on this subject was brief, we disagree that it was vague. When the arresting officer, who had witnessed the blood draw "start to finish," was asked whether a phlebotomist drew the blood, he answered, "Yes, a professional." When asked if he observed "the phlebotomist collect the vials and place them in the blood draw kit," the officer again replied, "Yes." The fact that the officer used the term "professional" to describe the individual is not inconsistent with the officer having first said "yes" to the question of whether a phlebotomist drew the blood, and his confirmation that he saw "the phlebotomist" collect the vials after drawing the blood further supports the circuit court's finding that the individual was a phlebotomist. We conclude that this testimony suffices to establish that a phlebotomist drew Rogers's blood and therefore that the requirements of WIS. STAT. § 343.305(5)(b) were satisfied.

¶23 In sum, neither of the issues raised in this appeal warrant reversal of the judgment of conviction or order denying postconviction relief.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11