# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 14, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No. 2020AP1575-CR** | Cir. Ct. No. 2017CF89 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS DISTRICT IV** |

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

MICHAEL D. MARTIN,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Portage County: THOMAS B. EAGON and THOMAS T. FLUGAUR, Judges. *Affirmed*.

Before Blanchard, P.J., Fitzpatrick, and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Michael Martin appeals a judgment of conviction for sexual assault of a child under the age of thirteen in violation of WIS. STAT. § 948.02(1)(e) (2019-20) following a jury trial.[1] He also appeals the circuit court's order denying his postconviction motion for a new trial. Martin argues that his trial counsel rendered ineffective assistance of counsel by failing to object to the following: several portions of the prosecutor's cross examination of him during trial, rebuttal testimony related to some of this cross examination, and one portion of the prosecutor's closing arguments. As to each claimed instance of ineffective assistance, we conclude that he fails to establish one or the other of the required prongs for such a claim, either that his counsel performed deficiently or that he was prejudiced. Based on the same reasoning, we reject closely related arguments Martin makes for a new trial based on plain error or that we should use our discretionary power under WIS. STAT. § 752.35 to order a new trial. Accordingly, we affirm.

## BACKGROUND

¶2 Pertinent events begin with two prior criminal cases brought against Martin, one in 1996 and the other in 1999, because facts regarding these prior prosecutions were part of the other-acts evidence that was admitted at trial, pursuant to WIS. STAT. § 904.04. Martin does not challenge any of the circuit court's rulings allowing other-acts evidence. However, much of the cross

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

Separately, the Honorable Thomas T. Flugaur presided over the jury trial and proceedings related to Martin's postconviction motion. The Honorable Thomas B. Eagon presided over the sentencing hearing and signed the judgment of conviction.

2

examination and rebuttal testimony that he now contends his counsel should have objected to relates to testimony about the prior cases. We now summarize the evidence regarding the prior cases that was presented at the trial in this case, and then address the background leading up to the trial and postconviction motion in this case.

*1996 Case*

¶3      A.B. testified in this case that, in 1996 when she was six and living in Wisconsin, Martin sexually abused her several times, including on one occasion touching her "with his fingers underneath [her] underwear."[2]  At the time, Martin was in a relationship with A.B.'s mother and he resided with the two of them. Martin was found not guilty at a trial.

¶4      Martin testified in this case that he turned down prosecution plea offers in the 1996 case, went to trial, testified to "the truth" in that case that he had done "nothing wrong," and presented an alibi defense that he was not in Wisconsin at the time of the alleged sexual abuse.

*1999 Case*

¶5      C.D. testified in this case as follows. Martin was a friend of C.D.'s father. C.D. and Martin had sex in June 1998, when C.D. was fourteen. Martin and C.D. then continued to have sex for six or seven months until C.D. became pregnant, at which point "everybody found out" that Martin was having sex with C.D. and Martin "admitted everything."

---

[2] We use pseudonymous initials for each of the alleged victims in the prior and current cases. *See* WIS. STAT. § 809.86(1), (4).

¶6 Martin testified in this case that when investigators came to interview Martin about alleged sexual assaults of C.D., he was truthful with them, "never denied anything," and more generally testified that "I never lied to anybody about it." Martin pled guilty to the 1999 charges and was sentenced to not more than six years of prison and a consecutive term of 10 years of probation.

*Subsequent Events*

¶7 Martin was released on parole after serving 42 months of his prison term for the 1999 case. In 2007, while still on probation, Martin obtained permission from the Department of Corrections to start having a romantic relationship with the mother of E.F., the victim in this case. The mother was in the midst of getting a divorce from E.F.'s father. E.F.'s mother, E.F.'s brother, and E.F. moved in with Martin. Martin and E.F.'s mother married in 2009.

¶8 E.F. testified in the trial in this case in part as follows. At some point between 2008 and 2011, when E.F. was eight or nine years old, Martin sat down next to her while wearing nothing but a bath robe and exposed himself to her. Martin had her "squeeze and pull" his penis, "probably three times." Martin touched her vagina, under her underwear. Martin told E.F. to keep this conduct secret and E.F. did not initially tell anyone about it. When E.F. was about ten years old, Martin again exposed himself to her and asked her for a hug, which she refused to do. This incident prompted E.F. to tell her mother about the earlier incident that specifically involved touching. Martin and E.F.'s mother had an argument and Martin apologized to E.F., but no authorities were informed at the time and they would not be informed for several years. In addition to these specific incidents, when E.F. was living with Martin, he would "frequently" wear nothing but the robe and expose himself to E.F., and would "sometimes" have her

sit on his lap while he had an erection.[3] E.F.'s mother, E.F.'s brother, and E.F. moved out of Martin's home in July 2015, and the mother and Martin were divorced some months later. In 2017, when she was 15, E.F. reported to her father the allegations regarding Martin summarized above and gave a statement to police. A child advocacy center employee conducted an additional interview of E.F., which was recorded. This included detailed statements about the alleged abuse.

¶9 Martin was charged with first degree sexual assault of a child under the age of thirteen in violation of WIS. STAT. § 948.02(1)(e) as a persistent repeater, *see* WIS. STAT. § 939.62(2m)(b)2.

¶10 At trial, the State called as witnesses E.F. and a detective who investigated her allegations in part by interviewing Martin, in addition to E.F.'s mother and E.F.'s brother. The State further called A.B. and C.D. as other-acts witnesses to testify about the 1996 and 1999 cases. Martin testified, denying that he had sexually assaulted E.F. or exposed himself to her. Martin called as witnesses his probation officer and a guardian ad litem who had been assigned to E.F. in family court proceedings involving E.F.'s parents. In its rebuttal case, the State called C.D. and the detective back to the stand. The jury found Martin guilty.

¶11 Martin filed a postconviction motion requesting a new trial based on allegations that he was provided ineffective assistance of trial counsel or alternatively that a new trial is required in the interest of justice. The circuit court

---

[3] E.F.'s testimony regarding Martin's allegedly exposing himself to her on occasions other than the touching incident when she was approximately eight or nine constituted a third category of other-acts evidence that the circuit court allowed to be admitted. To repeat, Martin does not challenge this pretrial ruling in this appeal.

held a *Machner* hearing at which Martin's trial counsel testified. *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). The circuit court denied the motion. Martin appeals.[4]

## DISCUSSION

### I. Ineffective Assistance Of Counsel

¶12    Martin argues that his trial counsel rendered ineffective assistance of counsel by failing to object to: (1) portions of the prosecutor's cross examination of him during trial regarding details of the 1999 case; (2) separate portions of cross examination of Martin and related rebuttal testimony offered by the State on the topic of whether Martin lied (at some unknown time to an unspecified person or persons) about the 1999 case and whether he dated a woman with an underage daughter following his 2015 divorce from E.F.'s mother; and (3) a portion of the prosecutor's closing argument in which the prosecutor observed that the alleged victim in this case was not impeached at trial based on inconsistencies between her trial testimony and her recorded statement to the child advocacy center employee.

¶13    Our supreme court has summarized pertinent standards for ineffective assistance of counsel as follows:

> Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact. The factual circumstances of the case and trial counsel's conduct and

---

[4] Now represented in this appeal by postconviction counsel, Martin abandons several additional arguments made to the circuit court specifically alleging that his trial counsel provided ineffective assistance by: failing to call the other guardian ad litem assigned to E.F.; failing to impeach E.F. through inconsistencies in her trial testimony and her earlier recorded statement (as opposed to merely failing to object to the prosecutor's closing argument based on this omission, which Martin raises in this appeal); failing to impeach C.D.; and failing to object to part of the prosecution's argument as vouching for E.F.

strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo. To demonstrate that counsel's assistance was ineffective, the defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial. If the defendant fails to satisfy either prong, we need not consider the other.

Whether trial counsel performed deficiently is a question of law we review de novo. To establish that counsel's performance was deficient, the defendant must show that it fell below "an objective standard of reasonableness." In general, there is a strong presumption that trial counsel's conduct "falls within the wide range of reasonable professional assistance." Additionally, "[c]ounsel's decisions in choosing a trial strategy are to be given great deference."

Whether any deficient performance was prejudicial is also a question of law we review de novo. To establish that deficient performance was prejudicial, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*State v. Breitzman*, 2017 WI 100, ¶¶37-39, 378 Wis. 2d 431, 904 N.W.2d 93 (citations omitted).

¶14 As to each claim of ineffective assistance, we conclude that Martin fails to establish one or the other of the required prongs for an ineffective assistance claim. Before addressing in turn each claimed basis for ineffective assistance, we note one shared aspect of his arguments that is significant throughout the analysis. This involves two strategies used by the defense at trial that involved Martin's history in the criminal justice system, both of which appeared to be designed to make the best of the fact that the circuit court granted the State's motions in limine to allow other-acts evidence.

¶15    One defense strategy was to highlight that, during much of his time living with E.F., Martin was aware that he was under a high level of scrutiny, or under a "microscope," because he had been adjudicated to be a sex offender and was on probation.  For example, the defense highlighted at trial that there were multiple investigations of Martin's living arrangements during this time period— one by the department of corrections, and two by guardians ad litem appointed to E.F.—each concluding that Martin had not been inappropriate in his interactions with E.F.

¶16    Another strategy was to contrast the fact that Martin admitted to authorities that he had committed the alleged sexual assaults in the 1999 case with the fact that he denied to authorities the allegations in both the 1996 case and this case.  According to defense counsel, this showed that Martin owns up to child sexual assaults he has committed when confronted about them.

¶17    In none of his ineffective assistance arguments does Martin contend that trial counsel's choice of either of these defense strategies was deficient in itself.  Instead, Martin's arguments on appeal assume that the strategies were not deficient to pursue, but he purports to show how counsel's failure to object at certain points of trial was ineffective and not justified by any aspect of pursuing these strategies as part of the overall theory of defense, which was that he never sexually assaulted E.F. and that she had become falsely convinced of assaults that never happened.

**A.  Cross Examination On Specific Facts Regarding 1999 Case**

¶18    Martin argues that his trial counsel was deficient for failing to object to the prosecutor's cross examination of Martin regarding certain facts relating to the 1999 case.  Martin contends that the testimony elicited on cross examination

8

was inadmissible under WIS. STAT. §§ 904.01 and 904.03 and that this contributed to the cumulative prejudice caused by the other claimed instances of counsel's deficient performance taken together. Specifically, Martin points to counsel's failure to object to the prosecutor eliciting testimony about: the length of Martin's 1999 sentence; how much of the 1999 sentence he served before release on parole; and his comments to police investigating this case regarding his attorney ("I had the worst lawyer ever") and the length of his sentence ("I was fucking fucked") in the 1999 case. Regarding prejudice, Martin argues that counsel's failure to object allowed the jury to learn that he went to prison in the 1999 case and that, though he did not serve his entire sentence in prison, Martin believed "that the six-year sentence he received for impregnating a 14-year-old was harsh and excessive." In an undeveloped argument, he further contends that this testimony allowed the prosecutor to argue in closing that Martin thought of himself as a victim and had lied to police about his sentence. We conclude that Martin fails to show that this cross examination and the resulting testimony undermine confidence in the outcome of the trial.

*Additional Background*

¶19 Martin's direct testimony in this case included the following. He made several references to his being on "probation" or "supervision" during the time period when he lived with E.F., which he explained was due to "the sexual assault that I did," as an adult, in having sex with the underage C.D. He acknowledged that his having sex with C.D. "was completely inappropriate, unlawful and a crime." As noted, he also made several references to his being truthful with investigators who interviewed him in the 1999 case by admitting to them that he had had sex with C.D. Martin testified that, at the time he faced the charges, his 1999 attorney told him "there is really no choice" but that he would be

convicted, given his admissions to police, but that if he entered a plea of guilty he would probably get probation.

¶20     As noted, Martin also testified in this case that he: was truthful with investigators of the 1996 case by denying guilt; rejected offers of plea bargains in that case; and proceeded to a trial in that case at which he testified accurately that he "did nothing wrong."

¶21     On cross examination, the prosecutor prompted Martin to discuss aspects of the 1999 case that Martin had related to a detective who was then investigating this case. This included the prosecutor asking Martin if he had told the detective that he had been sentenced to six years in prison and that he had served all of that time in prison. In response, Martin clarified, for the first time on cross examination, that his sentence included six years of incarceration, of which he served 42 months before release to parole, followed by ten years of probation. The prosecutor asked if Martin told the detective investigating this case that he "had the worst lawyer ever" in the 1999 case. Martin responded by testifying, as he had on direct examination, that the lawyer had told him he would receive a probationary disposition. The prosecutor asked if Martin told the detective "'I ended up just pleading guilty and rolling my dice and I got fucking fucked, like fucked,'" to which Martin replied that he had said that and added that "I got a very harsh sentence." Martin's counsel did not object to this questioning.

¶22     At the *Machner* hearing, Martin's trial counsel testified that he did not object to the prosecutor asking about the length of the sentence because it fit into one defense strategy. That strategy was

> to contrast the way Mr. Martin dealt with [the 1999] allegations and the way he was dealing with these false allegations in this case. Part of that strategy was to

10

> [highlight that Martin] acknowledge[d] what happened in [the 1999] case, and explain to the Jury that when there was an accusation made, that Mr. Martin took responsibility for his actions and had faced consequences, in contrast to this case. Because they were false allegations, he was fighting them and denying them because they weren't true.

Counsel further testified that he did not object to the prosecutor's other questioning about the 1999 case for the same reason.

*Analysis*

¶23    The general thrust of Martin's ineffective assistance arguments on both the deficient performance and prejudice prongs is based on the notion that the jury should not have been exposed to allegedly inadmissible evidence that put Martin's character in a bad light and in that way aroused "[the] jury's sense of horror and provoke[d] its instinct to punish."[5]    A significant problem with this argument is that Martin does not clearly explain what negative reaction the jury was supposed to have had to each *particular piece* of allegedly inadmissible evidence, either in isolation or combination with other pieces.

¶24    Notably, it is not clear what Martin means to argue was prejudicial about his trial testimony expressing disappointment in the sentence he received in the 1999 case. As best we understand his argument, it is premised in part on the idea that the jury might have considered all of Martin's testimony on cross

---

[5] In one of his arguments regarding prejudice due to ineffective assistance, Martin appears to paraphrase discussion of a distinct but analogous subject in *State v. Sullivan*, 216 Wis. 2d 768, 790, 576 N.W.2d 30 (1998) (expanding on the meaning of "unfair prejudice" under WIS. STAT. § 904.03). *See State v. Diehl*, 2020 WI App 16, n.12, 391 Wis. 2d 353, 941 N.W.2d 272. Because we resolve this ground and the next ground of Martin's ineffective assistance of counsel claim based on the prong of prejudice as defined in the context of that type of claim, we do not address Martin's arguments regarding the admissibility of the testimony in terms of "unfair prejudice" as that concept is applied under WIS. STAT. § 904.03.

examination about the 1999 case as establishing that Martin believed that he was the victim of unjustly harsh punishment because he did not appreciate the gravity of his conduct in the 1999 case. This premise is highly speculative. We fail to see any reason to think that a reasonable jury would reach this conclusion.

¶25     Martin may mean to make the following separate argument. When Martin testified to the length of his prison sentence, this in itself had a prejudicial effect by emphasizing that he was a convicted criminal and that his 1999 criminal conduct was serious. However, this potential argument has little weight in light of evidence adduced at trial, taken as a whole, that Martin does not now challenge as inadmissible or improper. To repeat, Martin does not challenge the circuit court's rulings on other-acts evidence, including in relation to the 1999 case, and there was no dispute at trial that in the 1999 case Martin had maintained a months-long sexual relationship with a fourteen-year-old, which he explained on direct examination provided the basis for his being on probation. In sum, Martin had already told the jury in direct examination by his trial counsel that he had committed child sexual assault and that he was under supervision as a result (that is, that he had been convicted for serious criminal conduct), and he does not now argue that eliciting this testimony was deficient performance by trial counsel. Moreover, regarding the fact of Martin's conviction for a crime, the jury was told conviction evidence could bear only on his credibility as a witness and that "a criminal conviction at some previous time is not proof of guilt of the offense now charged."[6] *See* ***State v. LaCount***, 2008 WI 59, ¶23, 310 Wis. 2d 85, 750 N.W.2d 780 ("Jurors are presumed to have followed jury instructions.").

---

[6] Martin makes a brief, related prejudice argument that we reject as undeveloped. He contends that aspects of the cross examination about his 1999 sentence provided a basis for the

(continued)

¶26     More broadly, Martin fails to show that the evidence he points to on this issue would have had more than an "'isolated, trivial effect'" in the context of the trial as a whole. *See State v. Sholar*, 2018 WI 53, ¶34, 381 Wis. 2d 560, 912 N.W.2d 89 (quoting *Strickland v. Washington*, 466 U.S. 668, 695-96 (1984)) (explaining that ineffectiveness claims are considered under the totality of the evidence before the jury). Each of the following tends to limit the potential prejudicial effect of the testimony challenged by Martin. E.F. in particular, and Martin to a lesser degree, testified to details regarding the alleged offenses, allowing the jury to assess their respective demeanors in considering the central question: which one was more credible on the topic of the alleged sexual assaults in this case. While there was no corroborating physical evidence or other witness testimony to this particular conduct, E.F.'s mother and brother corroborated some details of E.F.'s testimony.[7] Further, as noted, Martin admitted that he had sex on multiple occasions with C.D., an underage girl, which the jury could reasonably consider in assessing his alleged planning of, and motivation for, the charged sexual assaults. Similarly, the jury had the additional other-acts evidence we have described.

---

prosecutor to argue in closing that, as Martin characterizes the argument, Martin "lied about his sentence [in the 1999 case] to the police" investigating this case and that he viewed himself as a victim. This argument is undeveloped for at least the reason that Martin does not explain how the cross examination testimony at issue provided a basis for the particular closing argument passages he appears to reference.

We do not discern that Martin makes any developed argument about a purportedly prejudicial effect of the jury learning that he was released from prison on parole beyond any prejudice he might have suffered from other evidence that we address.

[7] For example, E.F.'s brother testified that on one occasion E.F. came into his bedroom, looking anxious and wanting him to go with her to walk past Martin and go downstairs. This corroborated at least to a degree E.F.'s testimony about trying to get away from Martin in this manner when she was approximately ten years old, after he had exposed himself to her.

¶27    Martin characterizes the State's case as "weak," with the effect that the presence of distracting or character-damaging evidence should be more likely to undermine confidence in the outcome.  *See id.* ("'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support'" (quoted source omitted)).  Martin is correct that the State's ability to prove his guilt came down to the weighing of his credibility versus E.F.'s credibility.  However, given the factors noted above, we are not persuaded that the core issue of Martin's and E.F.'s credibility was obscured or confused by digressions into Martin's expressions of disappointment regarding the 1999 case and the length of his sentence in that case.

### B.  Additional Impeachment And Rebuttal Evidence

¶28    Martin argues that his counsel rendered ineffective assistance of counsel by failing to object to additional areas of cross examination, specifically relating to Martin's alleged paternity of C.D.'s child, his alleged failure to make child support payments for the child, and whether Martin dated a woman after his divorce from E.F.'s mother in 2015 who was residing with a minor child at that time.  Martin further argues that counsel was also ineffective when he failed to object to the State presenting rebuttal evidence relating to each of these topics.  Martin argues in part that this cross examination and rebuttal evidence prejudiced him by demonstrating that Martin did not take his conduct in the 1999 case seriously and further that he "was a deadbeat father[] and continued to be a risk to the public."  We assume without deciding that Martin is correct that, if his counsel had objected to all of this evidence, it would not been admitted at trial.  We agree with the State's contention that any prejudicial effect from this evidence was trivial compared to the effect of the "substantial and disturbing" evidence that is

not challenged on appeal and, therefore, Martin has not satisfied the prejudice prong on these topics.

*Additional Background*

¶29 As noted, Martin testified on direct examination, in the context of discussing his alleged character for truthfulness, that in the 1999 case he "never lied to anybody." He also testified that he was "cautious" about "where [he] went and who [he] was around" during his time on probation, which covered the time period he lived with E.F., and that he was "careful" to avoid actual or perceived violations of probation conditions.

¶30 In cross examining Martin, the prosecutor asked if he had claimed, after he stopped having sex with C.D., that C.D. had falsely told him during the period over which they had sex that she was 17. Martin denied having told anyone that C.D. had lied to him about her age. The prosecutor then asked whether he had claimed, also "after the fact," that he was not the father of C.D.'s child. Martin confirmed having denied that he was the father. As part of this answer, Martin referenced the idea that he was not responsible for paying child support.

¶31 C.D. testified in part to the following on rebuttal. C.D. did not lie about her age to Martin, who in any case knew her age at the time they had sex. Despite this, Martin falsely claimed (at unidentified times to an unknown person or persons) that she had lied about her age. Martin was the father of C.D.'s child, but at some point Martin claimed that he was not the father. C.D. did not want Martin to pay child support.

¶32 In the context of cross examining Martin about his police interview in this case, the prosecutor asked Martin about a woman whom Martin dated after

his 2015 divorce from E.F.'s mother. The prosecutor asked Martin if he told the investigating detective that he dated only women whose children were "grown up"—that is, over 18 years old—because Martin "wasn't even going to put [him]self in that position" of being in close contact or proximity to underage children. Martin responded to the prosecutor's question in pertinent part by testifying that "I didn't put myself in [that] position after" his marriage to E.F.'s mother, in that the children of the women he dated after his divorce from E.F.'s mother "were grown up." He testified that this was to protect himself and to be "cautious." The prosecutor then asked if the woman Martin dated after 2015 had a 16-year-old daughter. Martin denied that as "wrong, or a lie" because the daughter "is 18."

¶33    The State called the detective as a rebuttal witness. He testified in pertinent part that he spoke with the woman Martin dated and her children as part of his investigation and learned that during the period when Martin dated this woman she had a daughter who was underage.[8]

¶34    The circuit court determined that Martin's counsel was not deficient for failing to object to cross examination regarding whether Martin falsely claimed that C.D. had lied to him about her age or about the age of the daughter of the woman Martin dated after 2015. The court also determined that the prosecutor

---

[8] Martin's trial counsel made some objections during the cross examination of Martin, but did not object to the prosecutor inquiring into the specific topics summarized in the text above and did not object at all to the calling of the rebuttal witnesses or the specific rebuttal testimony we summarize. At the *Machner* hearing, Martin's counsel testified that he did not recall having a strategic reason for failing to make additional objections to any of the cross examination of Martin regarding his alleged statements about C.D.'s allegedly lying about her age and the paternity of her child, the age of the daughter of the woman Martin dated after 2015, or the rebuttal testimony related to these topics.

went too far in delving into the topics of paternity and child support payments, and the court further concluded that Martin's counsel's performance was deficient because he failed to object to those lines of inquiry and related rebuttal testimony specifically. But the court denied Martin's postconviction motion on the ground that he failed to meet his burden on the prejudice prong. The court noted "that there were two or three days of testimony," and "a lot of evidence presented." The court additionally found that A.B. (the 1996 alleged victim) "was [a] pretty significant witness in the case" given that her allegations were "very similar" to E.F.'s allegations.

*Analysis*

¶35 Many of the same reasons noted in section A. above that establish Martin's failure to establish prejudice regarding that set of topics also apply here.

¶36 The topics here involved evidence that was tangential at best to the core issues at trial, and Martin again relies on speculative assumptions that the jury would draw off-point inferences about Martin's character. To take one example, the proposition that Martin resided with a woman, after living with E.F.'s family, who may have had a minor daughter does not come close to establishing that he was, as Martin now frames it, a continuing "risk to the public." In the absence of any prosecution argument identified by Martin to this effect, we fail to see how the jury was likely to have leapt to this conclusion. We again note that the jury was instructed not to consider the much more clearly presented and prejudicial fact that Martin had been convicted of a child sexual assault crime as direct proof of guilt. Similarly, the jury was told not to use the evidence presented about Martin's "other conduct" (*i.e.*, the other-acts evidence provided by A.B. and C.D.) "to

17

conclude [that] the defendant is a bad person, and for that reason, is guilty of the offense charged."

¶37 Having addressed Martin's first two ineffective assistance claims based on the prejudice prong—and because, as we address below, we reject his third ground for ineffective assistance based on the deficient performance prong—we reject Martin's argument that the cumulative prejudice that allegedly resulted from his counsel's performance as to all grounds was sufficient to undermine confidence in the outcome of his trial. *See* ***State v. Thiel***, 2003 WI 111, ¶¶59, 61, 264 Wis. 2d 571, 665 N.W.2d 305 ("prejudice should be assessed based on the cumulative effect of counsel's deficiencies"; "each alleged error must be deficient in law … in order to be included in the calculus for prejudice"). Assuming without deciding that counsel was deficient with respect to the testimony identified in the first two grounds of Martin's ineffective assistance claim, the potential prejudice presented by these isolated topics does not sufficiently accumulate to undermine confidence in the trial. *See **id.***, ¶61 ("in most cases errors, even unreasonable errors, will not have a cumulative impact sufficient to undermine confidence in the outcome of the trial").

### C. Prosecutor's Closing Argument

¶38 Martin argues that trial counsel performed deficiently by failing to object to what he contends were "misleading statements" by the prosecutor in closing argument. The prosecutor's statements that Martin argues were misleading consisted of highlighting how E.F. was not impeached at trial by the defense based on inconsistencies between her trial testimony and her earlier statement in the recorded interview. Martin argues that this falsely implied to the jury that E.F.'s testimony was "entirely consistent" with her earlier statement even

though there were in fact some inconsistencies and trial counsel could have used these as the basis to object to the prosecutor's argument. We conclude that Martin fails to establish that his trial counsel was deficient because counsel identified a reasonable strategic reason for not objecting to the prosecutor's statement about a lack of a showing of inconsistency.

*Additional background*

¶39   Martin's argument begins with the following two inconsistencies between E.F.'s recorded interview and later trial testimony. First, during the recorded interview, E.F. stated that Martin touched her vagina before he had her touch his penis. At trial, E.F. testified that, "[i]f [she] remember[ed] correctly," those events happened in the opposite order. Second, in the recorded interview, E.F. stated that she manipulated Martin's penis five or six times. At trial, E.F. testified that had done this "[p]robably like three times."

¶40   During closing argument, the prosecutor made the point that at trial E.F. "was not challenged whatsoever" with questions about how her trial testimony varied from the recorded interview. The prosecutor contrasted this with how the prosecutor had challenged aspects of Martin's direct testimony through questioning on cross examination about inconsistent statements.

¶41   At the ***Machner*** hearing, trial counsel indicated that at the time of trial he had noticed the inconsistencies in E.F.'s testimony now identified by Martin. Counsel indicated that he did not cross examine E.F. regarding what he considered "minor" inconsistencies because it would not effectively "impeach[] her credibility, but on the contrary, would have the effect of just redrawing the Jury's attention to … awful allegations." Moreover, counsel testified that he viewed E.F. as "coming across [as] credible" and opted to argue that E.F.

19

"believed what she was saying, even though it was, in fact, false." Counsel testified that he did not object to the State's argument that there were no inconsistencies between the recorded statement and the trial testimony "[f]or the same reason [he] didn't object to [E.F.'s] testimony regarding the minor inconsistency."

*Analysis*

¶42 Martin's argument fails for at least the following reason. He fails to show that it was an objectively unreasonable strategy for counsel to avoid drawing the jury's attention back to the disturbing details of E.F.'s allegations in order to address what were self-evidently minor inconsistencies, inconsistencies that the prosecutor could have readily attributed to insignificant memory lapses. Martin does not directly address what we deem to have been counsel's objectively reasonable assessment of the risk posed by redrawing the jury's attention to "awful" allegations. He also does not directly address the defense strategy of trying to persuade the jury that E.F. became convinced falsely that Martin had sexually assaulted her. Rather, he asserts that counsel could have pursued that strategy and still objected, but fails to clearly explain how this would have averted the risks identified by counsel, and in any case this assertion is beside the point.

¶43 At best, Martin makes a case that there could have been a potential benefit in an objection along the lines he now suggests, without showing that his counsel was objectively unreasonable in weighing that potential benefit against the risk. Thus, even putting to the side the fact that the prosecutor *accurately* observed that E.F. had not been impeached based on inconsistent statements, Martin's argument goes nowhere because he fails to take into account the risk side of the equation faced by trial counsel. Martin argues that "trial counsel's failure to

object cannot be justified without a reasonable strategic explanation," but fails to show why we should conclude that trial counsel did not provide an objectively reasonable strategic basis to decide not to object.

## II. Plain Error

¶44 Martin argues that the admission of the testimony and arguments underlying his ineffective assistance of counsel claims constitute plain error entitling him to a new trial. Under the plain error doctrine, this court may review errors that were otherwise forfeited by a party's failure to timely object. *See State v. Jorgensen*, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77. In order for the doctrine to apply, the error must be "'obvious and substantial,'" such as "'where a basic constitutional right has not been extended to the accused,'" and the doctrine is to be used only "sparingly." *Id.* (quoted sources omitted). We conclude that Martin fails to establish this in an appropriate case for the clear error doctrine to apply.

¶45 As noted above, the prosecutor's argument about E.F. not being impeached was accurate, and we agree with the State that the argument did not necessarily ask the jury to infer that E.F.'s testimony contained no minor inconsistencies. Thus, we question whether allowing the prosecutor's argument constituted an error, much less one that was obvious. *See State v. Bvocik*, 2010 WI App 49, ¶1, 324 Wis. 2d 352, 781 N.W.2d 719 ("when a prosecutor's closing argument asks the jury to draw an inference *that the prosecutor knows or should know is not true*, it is improper argument which may require reversal" (emphasis added)). This leaves the evidence relating to topics covered in Martin's cross examination and the rebuttal testimony summarized above.

¶46    Assuming without deciding that this evidence was allowed in error, we are not persuaded that it amounts to a plain error in the context of this case. *See **Jorgensen***, 310 Wis. 2d 138, ¶22 ("'the existence of plain error will turn on the facts of the particular case'" (quoted source omitted)).  For the same reasons we conclude that the rebuttal testimony and related cross examination of Martin did not prejudice him in the context of his ineffective assistance of counsel claims, it is insufficient to justify applying the sparingly used plain error doctrine here. *Cf. **McClelland v. State***, 84 Wis. 2d 145, 161-62, 267 N.W.2d 843 (1978) (admission of extrinsic evidence on collateral fact constituted plain error because it prevented the jury from focusing on material issues); *see also **State v. Sonnenberg***, 117 Wis. 2d 159, 179-80, 344 N.W.2d 95 (1984) (concluding that erroneous admission of extrinsic evidence regarding collateral fact was harmless error).

¶47    Martin attempts to bolster his plain error argument by alluding to two notes submitted to the circuit court by the jury during their deliberations.[9]  He may intend to argue that either or both of these notes demonstrate that the jury was distracted from the core issue—who was telling the truth about the alleged criminal conduct, Martin or E.F.—or resolved that core issue based on one or more of the tangential topics of cross examination he identifies.  However, he offers only speculative theories at best.

---

[9] One question was, "Why [the jury] did not get info proving or disproving" Martin's paternity of C.D.'s child?  The court responded that it "[could] not answer this question."  The other was a somewhat rambling question written by a juror who, as of that point in the deliberations, "expressed reasonable doubt" and understood the case to come down to "the eval of [E.F.'s] testimony vs. [Martin]'s."  The court responded to this note in part by directing the jury to base its decision "on the evidence presented at trial, and the law provided by the court."

## III. Interest Of Justice

¶48    Martin contends that erroneous admission of evidence and improper argument "clouded a crucial issue in this case" resolving who was more credible, E.F. or Martin, and therefore the real controversy in this case was not fully and fairly tried. Accordingly, Martin requests that we exercise our discretionary power to reverse and grant him a new trial in the interest of justice. *See* WIS. STAT. § 752.35 ("if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial"). Our discretionary reversal power "should be used only in exceptional cases." *State v. McKellips*, 2016 WI 51, ¶52, 369 Wis. 2d 437, 881 N.W.2d 258 (emphasis in original omitted). For the reasons noted above, we conclude that Martin fails to show that the evidence he now identifies as erroneously admitted prevented the trial from focusing on the credibility issues that mattered, or that the prosecutor's argument was improper. We conclude that this is not an exceptional case meriting reversal in the interest of justice.

¶49    For all these reasons, we affirm the judgment of conviction and the circuit court's denial of Martin's motion for a new trial.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.