# COURT OF APPEALS
## DECISION
## DATED AND FILED

## September 12, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.  2022AP702
2023AP1346-CR**

Cir. Ct. Nos.  2019TR1646R
2019CF127

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

IN THE MATTER OF THE REFUSAL OF JASON MICHAEL ZANDER:

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

  V.

JASON MICHAEL ZANDER,

   DEFENDANT-APPELLANT.

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

  V.

JASON MICHAEL ZANDER,

   DEFENDANT-APPELLANT.

---

APPEALS from judgments and an order of the circuit court for Columbia County:  TODD J. HEPLER, Judge.  *Affirmed*.

Before Blanchard, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.  Following a jury trial, Jason Zander appeals both a judgment of conviction for operating a motor vehicle while intoxicated as a fifth or sixth offense and a judgment revoking his driver's license based on a refusal hearing determination by the circuit court.[1]  He also appeals an order of the circuit court denying his pretrial motion to suppress evidence and his postconviction motion for a new trial alleging that trial counsel was ineffective.

¶2      Zander's pretrial motion sought to suppress all evidence obtained by the police officer who arrested Zander after the officer walked up to Zander, while Zander was sitting in a pickup truck, and initiated a conversation with him. Zander argues that this conduct constituted a seizure of Zander without reasonable suspicion, in violation of the Fourth Amendment.  Zander also argues that the circuit court erred in concluding that the officer did not seize Zander until after there was reasonable suspicion from the officer's perspective that Zander was intoxicated and had just operated a motor vehicle.  As part of Zander's argument, we understand him to contend that the circuit court clearly erred in finding that the officer initiated the conversation with Zander through an open window of the truck

---

[1] These appeals were consolidated for briefing and disposition by an order dated September 20, 2023.  *See* WIS. STAT. RULE 809.10(3) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

while Zander was sitting in it—as opposed to while Zander was standing next to the truck, as Zander claimed occurred. We conclude that the court did not clearly err in any of its findings and that the officer did not seize Zander until after reasonable suspicion of operating while intoxicated arose.

¶3    Zander also argues that the circuit court erred in denying his postconviction motion for a new trial, alleging ineffective assistance of trial counsel on multiple grounds. Setting aside arguments that Zander either concedes or abandons on appeal, he argues that his trial counsel was ineffective by failing to: (1) call additional witnesses at the suppression hearing; and (2) object at trial to an exchange between Zander and an officer that was captured on a squad car audiovisual recording after the exchange was allegedly heard by the jury, because the jury could have construed the exchange as a reference to prior OWI convictions that Zander had at the time of the arrest in this case. We conclude that Zander fails to establish that his trial counsel rendered ineffective assistance based on either of these grounds.

¶4    Accordingly, we affirm the judgments and the circuit court's denial of Zander's postconviction motion.

**BACKGROUND**

¶5    Zander was charged with operating a motor vehicle (a pickup truck then parked in the parking lot of a bar) while under the influence of an intoxicant or other drug in violation of WIS. STAT. § 346.63(1)(a) and operating with a

prohibited alcohol concentration in violation of § 346.63(1)(b), each as a fifth or sixth offense.[2]

¶6 Before trial, Zander moved to suppress all evidence that was gathered by the police officer after the officer walked up to Zander and initiated a conversation with him. The evidence Zander sought to suppress included the officer's testimony that he detected a "strong" odor of alcohol on Zander's breath and observed Zander's bloodshot, glassy eyes, as well as evidence collected through the officer's subsequent investigation leading to Zander's arrest.

¶7 At the pretrial suppression hearing, the police officer and Zander both testified. The officer testified as follows. At 10:41 p.m. on a Saturday night, the officer was standing in the parking lot of a bar and saw Zander walk out of the bar and enter a pickup truck. The officer approached the truck on foot, and as he did so, he saw Zander lower the truck's front passenger window. The officer initiated a conversation with Zander, and in the course of interacting with him, the officer smelled a "strong" odor of alcohol on Zander's breath and saw that Zander's eyes were bloodshot and glassy. After this, the officer had Zander undergo field sobriety tests and the officer arrested Zander.

---

[2] The prosecution also filed a notice of intent to revoke Zander's driving privileges for refusing a blood draw. Following a trial on the OWI charges, the circuit court held a refusal hearing at which it determined that Zander unreasonably refused to submit to a blood draw. Zander appeals the refusal determination, but his argument on this issue depends entirely on the same arguments that he presents in support of his appeal of the denial of his postconviction motion and the judgment of conviction for the OWI counts. Accordingly, we do not separately address the refusal hearing further and we affirm the refusal determination on the same grounds.

¶8    The circuit court appeared to credit the officer's testimony in its findings of fact at the suppression hearing, and Zander does not now argue that the court's findings varied from the officer's testimony in any way.

¶9    The circuit court denied Zander's motion to suppress, based on the court's determination that the officer did not seize Zander until after reasonable suspicion was established through the detection of the odor of alcohol and the observation of Zander's eyes.[3]

¶10    At trial, Zander did not dispute that his ability to operate a motor vehicle at around the time of his arrest was impaired due to his intoxication or that his blood alcohol level was above the legal limit.[4]  What the parties disputed was whether Zander in fact "operated" a motor vehicle by physically manipulating or activating its "controls" as "necessary to put it in motion."  *See* WIS. STAT. § 346.63(1)(a)-(b) (prohibiting people who have a "prohibited alcohol concentration" or are "under the influence of an intoxicant [or] controlled substance" from "operating a motor vehicle"); § 346.63(3)(b) ("operate" means the "physical manipulation or activation of any of the controls of a motor vehicle necessary to put it in motion").

---

[3] The circuit court also made a reference to the community care doctrine, suggesting that the officer's decision to walk up to and make contact with Zander was justified by the doctrine. But we need not and do not reach this potential alternative ground to affirm the circuit court because we conclude that the officer did not seize Zander before reasonable suspicion arose. *See State v. Kramer*, 2009 WI 14, ¶¶17, 20, 315 Wis. 2d 414, 759 N.W.2d 598 ("community caretaker function" is a basis to justify seizures made without reasonable suspicion or probable cause).

[4] The parties stipulated that Zander's blood alcohol content was 0.180 grams per 100 milliliters.  The circuit court instructed the jury that the parties stipulated to this fact.

5

¶11    In closing arguments at trial, the prosecution argued that, although Zander had not caused the truck to move, he had nevertheless "operated" it by using the key in the ignition to start the truck. To support this position, the prosecutor relied on the officer's testimony that the officer saw the headlights come on and heard the engine turn over and start just before the officer walked up to the truck. The prosecutor also relied on an audiovisual recording from the dashboard camera in the officer's squad car, arguing that it reflected that Zander and the officer agreed that Zander had started the truck's engine. In contrast, the defense argued that there was reasonable doubt that Zander "operated" the truck because the jury could find that he merely turned the ignition to the accessory mode position, in order to illuminate the interior light and remove some belongings, without starting the engine.

¶12    The jury found Zander guilty of operating a motor vehicle under the influence of an intoxicant and operating a motor vehicle with a prohibited alcohol concentration. The circuit court entered a judgment of conviction on the former count. *See* WIS. STAT. § 346.63(1)(c).

¶13    Zander filed a post-conviction motion seeking a new trial, alleging that he was denied constitutionally effective assistance of trial counsel. Zander claimed that his trial counsel was ineffective on the grounds summarized above.[5]

---

[5] Zander's post-conviction motion alleged additional grounds for his ineffective assistance of trial counsel claim, but he has abandoned them on appeal.

(continued)

¶14     The circuit court held a ***Machner*** hearing, at which Zander and his trial counsel testified regarding the claims for ineffective assistance of counsel. *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).  The court denied Zander's postconviction motion.  Zander appeals.

## DISCUSSION

¶15     Zander renews the arguments for suppression that he made in the circuit court and his postconviction claims of ineffective assistance of trial counsel.

¶16     Our standard for reviewing a circuit court's decision as to whether someone has been seized by police has two parts:  (1) findings of fact are upheld unless they are clearly erroneous; and (2) the application of constitutional principles to those facts presents issues of law that are subject to de novo review. ***County of Grant v. Vogt***, 2014 WI 76, ¶17, 356 Wis. 2d 343, 850 N.W.2d 253.

¶17     Similarly, an ineffective assistance of counsel claim presents a mixed question of fact and law.  ***State v. Domke***, 2011 WI 95, ¶33, 337 Wis. 2d

---

On a related note, we conclude that Zander concedes on appeal that another ground that he references in his opening appellate brief in support of his ineffective assistance of counsel claim lacks merit because he fails in his reply brief to respond to the State's arguments on the issue.  *See **United Coop. v. Frontier FS Coop.***, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578.  Specifically, in his opening brief, Zander argues that it was constitutionally ineffective for his trial counsel to fail to object to the circuit court's ruling that, if Zander testified, he would have to answer "at least one" when asked whether he had any prior criminal convictions.  *See* WIS. STAT. § 906.09.  The State argues that, based on unrefuted testimony at the ***Machner*** hearing, Zander never intended to testify at trial for reasons unrelated to the court's ruling.  Zander does not address the issue on reply, and for this reason we take him to concede the issue.  Further, even if Zander had not conceded the issue, he could not succeed on this claim for at least the reason that there is no evidence that the circuit court's ruling influenced his decision not to testify at trial.

268, 805 N.W.2d 364. Factual findings are reviewed for clear error and legal conclusions are reviewed de novo. *Id.*

## I. Motion to Suppress

¶18     The State does not dispute the following. The officer lacked both reasonable suspicion and probable cause to believe that Zander was committing or about to commit a crime before the officer walked to where Zander was sitting in the truck and initiated a conversation with him. For his part, Zander does not dispute that the officer's detection of a "strong" odor of alcohol on Zander's breath and observation that he had glassy, bloodshot eyes during the first moments of their encounter were sufficient signs of possible intoxication to warrant further investigation under the circumstances and assuming the credibility of the officer's testimony that Zander got into and started the truck. That is, there is no dispute that these signs, together with the facts that Zander had just walked out of a bar at 10:41 p.m. and had started the engine of the truck, created reasonable suspicion that would have justified the officer's further investigation that led to Zander's arrest if the officer did not seize Zander before the officer observed the signs of intoxication.

¶19     Instead, Zander's argument is that the officer seized Zander before reasonable suspicion arose. As part of this argument, Zander apparently contends that the circuit court erred in crediting the officer's testimony at the suppression hearing that Zander got into the truck after he walked from the bar and that the officer spoke to Zander through the truck's lowered window, instead of crediting Zander's contrary testimony at the suppression hearing that Zander was standing next to the truck when the officer walked up to him. However, Zander is not clear in describing how the alleged factual error by the court in finding that Zander was

in the driver's seat of the truck, and not standing next to it, could be significant to the analysis of when Zander was seized. Nor does Zander identify the precise moment when he alleges the seizure took place under either of the two versions of events. Taking Zander's briefing as a whole, we interpret his argument to be that the officer seized him by walking up to him and initiating a conversation when Zander stood next to the truck. Zander maintains that this was an unconstitutional seizure because Zander did not "overtly or implicitly consent" to the officer's approach and initiation of conversation with him because Zander had not displayed any conduct suggesting intoxication.

¶20 The State argues that Zander was seized at some point after the officer approached Zander, initiated conversation, and noticed signs of intoxication. The State maintains that this was a lawful seizure because it occurred after reasonable suspicion arose. After providing pertinent legal standards and additional background, we explain our conclusion that Zander fails to establish that the circuit court clearly erred in crediting the officer's testimony. We then explain why we conclude that the State is correct regarding the timing of Zander's seizure under the facts found by the circuit court (and even under the slightly different facts testified to by Zander), and we address Zander's remaining arguments to the contrary.

*A. Legal Standards*

¶21 Police here did not have a warrant to arrest Zander. Therefore, police could not seize him, consistent with the Fourth Amendment, without

9

reasonable suspicion or probable cause.[6]  *See* ***State v. Young***, 2006 WI 98, ¶¶20, 22, 294 Wis. 2d 1, 717 N.W.2d 729.

¶22     Not all encounters between police and other people are seizures.  To the contrary, police may lawfully pursue a broad variety of inquiries and tasks that involve interactions with people, stopping short of a seizure, in the absence of reasonable suspicion or probable cause.  *See* ***Vogt***, 356 Wis. 2d 343, ¶26 (of "countless interactions or encounters among police and members of the community," "[n]ot all encounters are seizures, and these non-seizure encounters are not governed by the Fourth Amendment").  Under what is often referred to as the ***Mendenhall*** test, there is no seizure for constitutional purposes unless the officer uses physical force or a display of authority sufficient to restrain the person's liberty interest.  ***Vogt***, 356 Wis. 2d 343, ¶¶20, 22 (citing ***U.S. v. Mendenhall***, 446 U.S. 544, 552 (1980)).  Thus, for example, an officer's status as an authority figure while being in the presence of a person, standing alone, does not automatically cause a seizure of that person.  ***Id.***, ¶24 (citing ***INS v. Delgado***, 466 U.S. 210, 216 (1984)).  The liberty of a person has been restrained when police exercise their authority in a manner such that, under the circumstances, "'a reasonable person would have believed that [the person] was not free to leave.'"  ***Id.***, ¶20 (quoting ***Mendenhall***, 446 U.S. at 554).  Circumstances that "might suggest a seizure" could include "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching [or blocking] of the …

---

[6] Zander bases his argument on both the Fourth Amendment to the United States Constitution and Article I, § 11 of the Wisconsin Constitution, and he does not make any argument that distinguishes between the two constitutions.  *See* ***State v. Dearborn***, 2010 WI 84, ¶14 & nn.6-7, 327 Wis. 2d 252, 786 N.W.2d 97 (both Fourth Amendment and Wisconsin Constitution protect the "right to be secure against unreasonable … seizures," and Wisconsin courts typically interpret these constitutional "protections in this area identically").

citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *Id.*, ¶¶23, 53 (quoting *Mendenhall*, 446 U.S. at 554).

¶23    We now turn to *Vogt* because it illustrates the application of the *Mendenhall* test to facts that are somewhat analogous to those here. An officer saw Vogt's car pull into a lot next to a closed park and boat landing at 1 a.m. *Vogt*, 356 Wis. 2d 343, ¶¶4-5. The officer parked his squad car behind Vogt's car, with the result that there were some obstacles to Vogt's ability to drive away. *Id.*, ¶¶6, 13-14, 41. The squad car's emergency lights were not on. *Id.*, ¶¶5-6. The officer knocked on Vogt's car window, motioning for Vogt to lower it. *Id.*, ¶¶7-8. After Vogt complied by lowering the window, the officer smelled intoxicants and noticed that Vogt's speech was slurred, leading to events that culminated in his arrest. *Id.*, ¶8.

¶24    The question in *Vogt* was, did the officer seize Vogt before Vogt lowered the window in response to the officer's request to lower it? *Id.*, ¶2. Our supreme court answered this question no, because a reasonable person in Vogt's position would have believed that he was free to leave under the totality of the circumstances. *Id.*, ¶53. That is, the officer's conduct under the totality of the circumstances did not display sufficient authority to restrain Vogt, including that the squad car emergency lights were off and that there was a path for Vogt to drive away if he wanted to, even if there were some obstacles. *See id.*, ¶¶6, 41-43. Further, the officer's knock on Vogt's window was only an attempt to request a conversation and not assertive enough to constitute a "command" that Vogt lower the window. *See id.*, ¶¶43-44, 51, 53.

### B. Additional Background

¶25 With these standards in mind, we now provide more expansive background from the testimony at the suppression hearing. To repeat, the arresting officer and Zander provided somewhat differing accounts of their initial contact, but the circuit court credited the officer's testimony to the extent that it was contrary to Zander's testimony.

¶26 The officer testified as follows at the suppression hearing. The officer was standing outside of a bar at 10:41 p.m. on a Saturday night. The officer had left his official vehicle parked in a location that was out of view of the immediate vicinity of the bar. The officer saw Zander walk out of the bar and get into a truck that was parked in the bar's parking lot. The officer saw the truck's headlights come on and heard its engine turn over several times and start running. On foot, the officer approached the truck while the truck's engine was still running. The officer did not see Zander stumble, fall, or otherwise give signs of intoxication when walking out of the bar to the truck.

¶27 As the officer approached the truck, Zander lowered the front-passenger-side window. As the officer stood next to the truck on the passenger side, the officer saw Zander sitting in the driver's seat. Through the open front passenger-side window, the officer identified himself to Zander as an officer and told Zander that the officer "wanted to check on" Zander because the officer had seen Zander leave the bar and get into the truck. Zander told the officer that he was "going to catch up to her" and simultaneously pointed to an intersection near the bar's parking lot where a different truck was then stopped. The officer asked Zander to clarify whether this meant that Zander planned to catch up with this other truck. Zander responded that he was not planning on catching up to anyone.

12

¶28 During this initial conversation with Zander, the officer detected a "strong" odor of alcohol on Zander's breath. The lighting conditions were poor in the parking lot. The officer shined his flashlight into the truck and saw that Zander's eyes were bloodshot and glassy. Without the officer requesting that Zander do so, Zander turned off the truck's engine, closed the front passenger-side window, and got out of the truck. The officer asked Zander to move in front of his squad car to record their continued contact and to conduct field sobriety tests. After Zander performed the tests, the officer arrested him.

¶29 Zander's testimony at the suppression hearing varied from the officer's testimony as follows. When Zander left the bar and walked to the truck, he did not seat himself in the driver's seat. Instead, according to Zander, he opened the driver side door, put one foot into the truck with his other foot still on ground, leaned into the truck, and used his key to turn the ignition to the accessory mode. When the truck's headlights came on, Zander accidentally "bumped" the ignition, causing the starter to "barely click[]." Zander immediately "let [the key] go back to the accessories position" before the engine turned over. After retrieving some belongings, Zander used his key to "lock[] the truck up." At this point, Zander was standing in the parking spot next to the driver's side of the truck and he noticed the officer walk toward him. It was impossible for the front passenger window to have been lowered that night, as the officer testified, because that window was inoperative and stuck in the "up" position. To support this point at the suppression hearing, Zander presented an auto parts invoice that he asserted was for a part to fix the front passenger window, dated 18 days after his arrest.

¶30 Zander argued to the circuit court that the officer seized him when the officer approached him and initiated a conversation without reasonable suspicion. The prosecution argued that Zander was not seized at that time.

13

¶31 Because the circuit court implicitly credited the officer's testimony over Zander's, the court concluded that the interaction between Zander and the officer "was a consensual contact" up to the point when the officer noticed signs of Zander being intoxicated, which gave the officer reasonable suspicion to lawfully seize Zander to investigate a possible law violation.

## C. Analysis

¶32 We begin our analysis by briefly explaining why we apply the pertinent standards to the facts implicitly found by the circuit court, and reject Zander's apparent argument that we should base our review instead on his suppression hearing testimony. Specifically, Zander contends that the court should not have credited the officer's testimony because it would have been impossible for Zander to open the front passenger window in light of his testimony and the auto repair invoice. Instead, Zander argues that the court should have credited Zander's testimony that he was standing in an adjacent parking spot and did not notice the officer approach until the officer was already nearby. But Zander does not meet his burden to show that the court clearly erred in crediting the officer's testimony that the passenger side front window of the truck was lowered that night, as the officer testified it was, despite it allegedly being inoperable at the time, and deciding not to credit Zander's evidence offered to show that the window was completely inoperable at that time. *See **State v. Wilson***, 2022 WI 77, ¶18, 404 Wis. 2d 623, 982 N.W.2d 67 ("A finding of fact is

clearly erroneous if it is against the great weight and clear preponderance of the evidence.").[7]

¶33 With this point about the factual basis of our review in mind, we conclude that the officer did not seize Zander until after the officer was presented with reasonable suspicion that Zander operated the truck while intoxicated. Indeed, as we now explain, compared with the facts in *Vogt*, this is an easier case for a determination that there was not a seizure.

¶34 In *Vogt*, the officer parked behind Vogt's car, requiring Vogt to maneuver his car around the officer's vehicle to drive away. *See Vogt*, 356 Wis. 2d 343, ¶¶6, 12-13, 42. Here, the officer did not create obstacles for Zander to drive away, but instead the officer merely walked up to the passenger side of the truck and did not obstruct the path of Zander's vehicle in any way.

¶35 Another difference that makes this case even less amenable to a seizure determination than *Vogt* is that the officer in *Vogt* knocked on the vehicle window and asked Vogt to lower it. *See id.*, ¶¶7, 34-35, 38, 43-44. Here, it is uncontested that the officer did not knock on the window, nor did he issue any commands or directives to Zander until, at the earliest, he directed Zander to stand in front of the officer's squad car. This put the officer in a position, before justification for a seizure was required, to plainly detect a "strong" odor of alcohol

---

[7] Moreover, Zander fails to show that—assuming the officer testified inaccurately at the suppression hearing about Zander lowering his window, or perhaps which window Zander lowered—this significantly affected the officer's credibility regarding other points more relevant to determining when the seizure took place. We discuss this last point further in rejecting one of Zander's ineffective assistance of counsel arguments. In sum, our analysis is based on the account given by the officer, though we question whether Zander's testimony, even if fully credited, materially supports his position that he was seized by the officer's approach on foot and initiation of conversation.

on Zander's breath, which prompted the officer to shine his flashlight into the truck and observe Zander's bloodshot and glassy eyes. *See State v. Wittenberg*, 997 N.W.2d 665, 670 (Iowa 2023) (two police officers shining flashlights into car from either side did not constitute seizure); *United States v. Douglass*, 467 F.3d 621, 624 (7th Cir. 2006) (two officers' use of flashlights to illuminate inside of vehicle "insignificant" to seizure analysis absent other coercive factors given events occurred in darkened parking lot). In addition, like the officer in *Vogt*, the officer here did not use his vehicle's emergency lights or "brandish any weapon." *See Vogt*, 356 Wis. 2d 343, ¶¶6, 36, 53.

¶36 Setting aside Zander's argument based on his testimony that he was standing next to the truck, Zander may mean to argue that the officer's approach to the truck that Zander was sitting in constituted an unconstitutional seizure. This is because, as Zander puts it, he never "overtly or implicitly agreed or consented to being tracked … and being questioned." However, as we have explained, the issue is whether the officer exercised official authority in a manner that was intimidating to the point that a reasonable person in Zander's position, under the totality of the circumstances, would not have believed he was free to leave. If the officer's mere approach to the truck here constituted a seizure, then police would be unreasonably hindered in their ordinary job functions. *See id.* (observing that if reasonable suspicion were always required, officers would be unable to perform their necessary duties because they "would be hesitant to approach anyone for fear that the individual would be 'seized' and that any question asked, however innocuous, would lead to a violation of the Fourth Amendment").

¶37 In an attempt to distinguish the facts here from *Vogt*, Zander emphasizes that there was no evidence that he displayed any "unusual" activity during his walk from the bar, or in entering and starting up the truck, by which he

16

apparently means that there was no evidence that he displayed any signs of intoxication at that time. In purported support of his point, Zander relies on the following excerpt from *Vogt*, describing the conduct of the investigating deputy in that case:

> Ultimately, what Deputy Small did in this case is what any traffic officer might have done: investigate an unusual situation. As the circuit court noted, "what the officer did seems perfectly reasonable." Deputy Small was acting as a conscientious officer. He saw what he thought was suspicious behavior and decided to take a closer look. Even though Vogt's conduct may not have been sufficiently suspect to raise reasonable suspicion that a crime was afoot, it was reasonable for Deputy Small to try and learn more about the situation by engaging Vogt in a consensual conversation.

*Id.*, ¶51. An example of unusual activity, Zander suggests, would have been if he had displayed difficulty walking to the truck. Here, however, the officer did not observe any such signs of intoxication before the officer initiated conversation with him.

¶38 Zander misinterprets *Vogt* as suggesting that the analysis of whether a seizure has occurred in a case of this type is informed in part by whether the allegedly seized person showed signs of intoxication. When construed in proper context, this passage is not meant to add an additional factor to the *Mendenhall* test. Instead, it merely emphasizes that officers are allowed under the Fourth Amendment to gather facts before a seizure occurs, so long as the circumstances do not cause a reasonable person to believe that the person is not free to leave. As previously discussed, applying the appropriate standard demonstrates that a

17

reasonable person in Zander's position would have believed that he was free to leave at least up until the moment when reasonable suspicion arose.[8]

## II. Postconviction Motion; Ineffective Assistance of Counsel

¶39    Zander argues that the circuit court erred in denying his postconviction motion, renewing his three grounds for ineffective assistance of trial counsel. After providing pertinent legal standards, we address each argument in turn.

¶40    A defendant establishes ineffective assistance of counsel by proving that counsel's performance was deficient and that such performance prejudiced the defense. *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To prove deficient performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness when considering all of the circumstances. *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (citing

---

[8] Zander makes two additional arguments that we reject without the need for detailed discussion. Zander argues that his interaction with the officer was an unconstitutional seizure because it resembled an illegal "checkpoint on the road where officers stop either all vehicles or vehicles at random, in a designated location to check to see if they are driving while under the influence." It is not clear to what extent this is intended as a stand-alone argument, separate from those we have rejected above. In any case, as best we understand the argument, it appears contrary to the logic of *County of Grant v. Vogt*, 2014 WI 76, 356 Wis. 2d 343, 850 N.W.2d 253. Further, the argument is undeveloped. Zander fails to provide a legally supported argument which ties the facts of this case to the concept. *See Associates Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (declining to address conclusory and undeveloped arguments).

Separately, Zander argues that the decision in *Vogt* should be overturned because it was wrongly decided. But he acknowledges that this court lacks the authority to do this and that he raises this argument only to preserve it for potential consideration by our supreme court in the event that it grants a petition for review of this opinion. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

*Strickland*, 466 U.S. at 686). To prove prejudice, the defendant must show that, but for counsel's unprofessional errors, there is a reasonable probability that the results of the proceedings would have been different. *Id.*, ¶37 (citing *Strickland*, 466 U.S. at 694).

### A. *Failure to Call Additional Suppression Hearing Witnesses*

¶41  Zander maintains that his trial counsel was constitutionally ineffective for failing at the suppression hearing to call the same witnesses that he called at trial. Zander argues that these witnesses would have testified at the suppression hearing (as they did at trial) to evidence that could support a finding that the front passenger window of the truck was inoperative at the time of Zander's arrest, discrediting the officer's testimony that Zander lowered this window as the officer approached.

¶42  The following additional background is pertinent to this argument. At trial, the defense called three witnesses who offered testimony in support of the proposition that the front passenger-side window on Zander's truck was, at all relevant times, stuck in the "up" position. The first witness testified that he had known Zander for about eight years and that, for "as long as [the witness could] remember," Zander's front passenger window was "broken" in that it "didn't go down." The second witness was a private investigator who examined Zander's truck in March 2020, after Zander's arrest. She testified that the front passenger window could not be lowered. The third witness was a woman who accompanied Zander to the bar and was present for part of Zander's interaction with the officer. She testified that, when she went to retrieve the truck on the day following Zander's arrest, the front passenger window could not be lowered.

19

¶43 Zander cannot prove prejudice on this issue for at least the following reason. Assuming that the trial witnesses had testified at the suppression hearing about the window allegedly being stuck in the up position, and also assuming that this testimony had caused the circuit court to credit Zander's testimony over the officer's version regarding the window, the evidence still would have supported the conclusion that the interaction between Zander and the officer was not a seizure.[9] This is because, when one credits Zander's account of the facts, there is even *greater* support for this conclusion than when one credits the officer's version. According to Zander's testimony, he had just used his key to manipulate the ignition of the truck and was standing outside of the truck when the officer walked up to him in a non-threatening and non-confrontational manner. For example, Zander's account did not provide meaningful evidence that the officer issued a command or directive of any kind before conversing with Zander, nor did Zander testify that the officer was not close enough to smell Zander's breath or see Zander's eyes. More generally, Zander did not testify that the officer's on-foot approach and initiation of conversation involved brandishing any weapon, touching Zander, physically preventing him from leaving, or directing him to go to a different place. *See id.*, ¶¶23, 52.[10]

---

[9] To be clear, the circuit court stated in its decision denying Zander's postconviction motion that, if the testimony that Zander elicited at trial regarding the truck window had been presented at the suppression hearing, this would not have led the court to make "a different credibility determination" regarding the officer's testimony at the suppression hearing.

[10] For these same reasons, none of the testimony of the witnesses called by the defense at trial regarding operability of the truck's front passenger-side window affects our reasoning in rejecting Zander's challenge to the circuit court's denial of his motion to suppress. *See supra* note 7; **State v. Griffin**, 126 Wis. 2d 183, 198, 376 N.W.2d 62 (Ct. App. 1985) ("When reviewing an order on a motion to suppress evidence, an appellate court may take into account the evidence at the trial, as well as the evidence at the suppression hearing.").

### B. Failure to Move for Mistrial; Prior Convictions Reference

¶44    Zander argues that his trial counsel was prejudicially deficient for failing to object to a recorded reference that the jury allegedly heard during trial. The recorded reference occurred during the playing of the officer's squad car audiovisual recording and involved Zander talking about his prior operating while intoxicated convictions.   More specifically, Zander contends that trial counsel performed deficiently by failing to move for a mistrial after the jury allegedly heard the following exchange from the recording:

> Officer: Boy … have you ever gotten in trouble like this before?
>
> Zander:  (nods his head)
>
> Officer:  You have been?
>
> Zander:  Yes sir.
>
> Officer:  How many times?
>
> Zander:  This would be number 6 if I had driven away.
>
> Officer:  This would be number 6?
>
> Zander:  Yes sir.
>
> Officer:  Alright … so you feel pretty confident in that … you're too impaired to drive?
>
> Zander:  I was waiting for her to come around.[11]

---

[11] Setting aside the issue of what was in fact audible to the jury at trial, we note that Zander appears to derive the content of this exchange from the squad car video.  The State does not dispute that Zander's appellate briefing accurately transcribes the exchange, at least when the recording is played on some equipment under favorable acoustic circumstances.

(continued)

¶45    Zander argues that this prejudiced him because, assuming that the jury heard this exchange, it would likely have found that Zander has a "propensity to drink and drive." *See State v. Diehl*, 2020 WI App 16, 391 Wis. 2d 353, 941 N.W.2d 272 ("the danger is that the jury will base its verdict on the improper propensity inference and convict, even if the State has not met its burden of proof on each element of the charged offense"); *State v. Alexander*, 214 Wis. 2d 628, 642-44, 571 N.W.2d 662 (1997).    That is, Zander argues that there was an impermissible risk that the jury found that he had operated the truck in this instance, while he was indisputably intoxicated, because this improper evidence showed his propensity to operate motor vehicles while intoxicated.

¶46    We assume without deciding that the jury heard the exchange quoted above and also assume that it would have gleaned from this that Zander had five prior OWI convictions.   Nevertheless, even with those assumptions, we conclude that Zander has not met his burden to show that counsel's failure to object to the exchange prejudiced the outcome of trial, given the evidence at trial that Zander was intoxicated and started the engine of his truck.   The jury would have based its verdict on the permissible trial evidence, which was very strong, that Zander operated his truck while intoxicated.    *See Diehl*, 391 Wis. 2d 353, ¶¶38-43 (weighing whether deficient performance resulting in jury hearing testimony raising inference of prior OWI convictions was "great enough to undermine the reliability" of trial); *Strickland*, 466 U.S. at 695 ("a court hearing an

On our own review of the recording, when it is played on the equipment that is available to us from a flash drive in the record on appeal, it is audible and reveals only small differences between the words we hear and the exchange as presented in Zander's briefing, which we quote in the text.  These small differences are all trivial and could have no effect on the issues presented in this appeal.

ineffectiveness claim must consider the totality of the evidence before the judge or jury").

¶47    The following additional background provides context for our conclusion.  Before trial Zander's counsel requested that the audio portion of the officer's squad car audiovisual recording containing the above-quoted exchange be muted by the prosecutor when the prosecutor played it in court in the presence of the jury.  Counsel also requested that the exchange be redacted from a transcript of the audio portion of the recording that the prosecution intended to provide to the jury.  The prosecution did not object to either of these requests, and the circuit court ruled that this audio portion of the recording was to be muted and the corresponding portion of the transcript redacted.

¶48    Turning to what occurred regarding the recording at trial, the trial transcript reflects that a portion of the recording was played before Zander's trial counsel asked to approach the bench.  There is no dispute that this portion of the recording included the entirety of the exchange at issue, although the trial transcript does not reflect how or when the prosecutor in fact muted and unmuted the recording as directed by the court (and no further illumination on this topic would occur at the eventual *Machner* hearing).

¶49    Out of the hearing of the jury, the following dialog between Zander's trial counsel and the court took place:

> Trial Counsel: Sorry.  I know [the prosecutor] didn't do it on purpose, but I did hear a number six.  Now it was out of context, but I did hear a number six just before you turned it back on.
>
> Court: I did not.  I mean, I'm not saying it didn't happen. There was a lot of numbers and a lot of garbage, so.

23

At this point trial counsel said only "Fair enough" and "Okay" in response to the court. Counsel then dropped this topic and turned to a different one regarding the audiovisual recording: counsel objected to the relevance of the remaining contents of the recording that the prosecution sought to play, showing Zander undergoing the field sobriety testing. This objection was overruled and is not pertinent to any issue raised on appeal. Trial counsel did not move for a mistrial on the basis of a potential reference to "a number six" or any other aspect of the exchange at issue, either during the officer's testimony or at any later point throughout the duration of trial.

¶50 After the side bar ended, the prosecutor resumed playing the recording for the jury. This was the point in the recording immediately following Zander saying that he was "waiting for her to come around." As reflected in the transcript provided to the jury, the following was heard:

> Officer: Then why turn your truck on? The weather's not so bad out, you know?
>
> Zander: No. I just wanted to get my stuff out of there.
>
> Officer: No. But you turned your truck on.
>
> Zander: I turned it on and then shut it off. I was just trying to get my stuff out ….
>
> Officer: You turned it off because we came up to talk to you.
>
> Zander: … No, I seen you guys sitting there before I turned it on. I wasn't … planning to drive away.
>
> ….
>
> Officer: Okay. So, … why'd you turn your truck on? I guess I'm still not understanding that. When I get stuff out of a vehicle I don't turn it on to get the stuff out. You know what I mean? So what was your thinking behind that?

24

Zander: I needed the dome light to work so I [could] grab my stuff.

¶51 Later in the trial, the defense called as a witness a private investigator who testified that, when the key was inserted into the ignition of the pickup truck at issue and "turned … one click," the result was that some "dash lights" came on, but that "the dome light did not come on." The investigator did not address the topic of what it took to start the engine with the key.

¶52 The jury was instructed that "Operate means the physical manipulation or activation of any of the controls of a motor vehicle necessary to put it in motion." As noted, the prosecutor in closing argument emphasized the portion of the recording that captured Zander's admission, "I turned it on and then shut it off," which directly corroborated the officer's trial testimony that he heard Zander start the truck and turn it off. The defense argued in pertinent part that there was reasonable doubt that Zander had turned the key far enough to turn on the engine, as opposed to only reaching the "accessory mode" position.[12]

¶53 With this background in mind, we conclude that the evidence that Zander physically manipulated some of the controls of the truck necessary to put it in motion was so strong and essentially undisputed at trial that the possible references to his prior convictions would not have made a difference at trial, even assuming the jury heard and understood the exchange at issue. The jury heard

---

[12] Defense counsel's argument was confusing, in that counsel suggested to the jury that the private investigator testified that the dome light of the pickup truck did not come on when the key was turned to accessory mode, but rather that the dome light would come on only if the engine started. But we assume, possibly in Zander's favor, that the jury would have ignored counsel's inaccurate argument and instead was free to credit the actual testimony by the investigator, which we have summarized: when the key was "turned … one click," some "dash lights" came on, but "the dome light did not come on."

Zander, through the recording, admit at multiple points to "turn[ing] [his truck] on."

¶54 Defense counsel argued that this could have been Zander explaining that he merely turned his key to "accessory" mode. But we are not persuaded that the jury could have reasonably interpreted Zander admitting to "turning on" the truck in this context to mean putting it in accessory mode and not starting the engine, regardless of any consideration of Zander's prior convictions. Notably, the recording reflects that Zander told the officer that Zander "turned [the truck] on" in order to turn on the dome light, and the investigator testified that the dome light did not in fact turn on when the key was turned "one click." This leaves virtually no room for an argument that Zander meant "turn on" to mean anything other than manipulating his key to start the truck's engine.[13] Thus the evidence very strongly supports the jury's verdict on the only disputed issue at trial: whether Zander "operate[d]" the truck. *See Milwaukee County v. Proegler*, 95 Wis. 2d 614, 626, 291 N.W.2d 608 (Ct. App. 1980) ("turning on the ignition or leaving the motor running while the vehicle is in 'park'" falls within the definition

---

[13] It would not matter under the applicable legal standard what Zander's purpose might have been in starting the engine while he was undisputedly intoxicated. *See Milwaukee County v. Proegler*, 95 Wis. 2d 614, 628, 291 N.W.2d 608 (Ct. App. 1980) ("a finding of intent to drive or move the vehicle is not required to find a defendant guilty of operating a vehicle while under the influence of an intoxicant"). Therefore, even if the jury had found that Zander started the truck engine for the sole purpose of activating the dome light, he would still be guilty of the charged offense.

On a related note, we assume without deciding that, if Zander put his key into the ignition and turned it only far enough to reach the accessory mode, this would not have satisfied the statutory definition of "operate" in the OWI context. We observe that this proposition was implied in Zander's trial theory and his postconviction argument on appeal. This may be a dubious proposition, given that the key and the ignition are controls of the truck that were necessary to put the truck into motion and Zander indisputably manipulated those controls, even if he may have done so for a purpose other than turning the truck on. *See* WIS. STAT. § 346.63(3). But we need not and do not resolve that issue.

of "operate" in WIS. STAT. § 346.63(3)). Summarizing in terms used in *Strickland*, the verdict here was less likely to have been affected by counsel's supposed errors with respect to prior OWI conviction references than in a case in which a verdict is "only weakly supported by the record." *See Strickland*, 466 U.S. at 696.

¶55 Under these circumstances, we conclude that there is not a reasonable probability that the jury was swayed in its weighing of the central factual issue by what we assume was its exposure to, and prejudicial conclusion regarding, the exchange referring to Zander's admission about prior convictions. *See Strickland*, 466 U.S. at 695-96 (noting that some trial errors will have only an "isolated" effect on the inferences to be drawn from the evidence). It is true that, as Zander now emphasizes, such references generally create a high risk of unfair prejudice, as the term "prejudice" is used in WIS. STAT. § 904.03. *See Diehl*, 391 Wis. 2d 353, ¶¶21-22, 32. But Zander's admission, "I turned it on and then shut it off," together with the clear testimony of the officer on this point and no clear contrary evidence, rendered this a very strong case for the prosecution. This was not a close case on the narrow issue raised, nor was it a case that depended heavily on Zander's character or credibility. In those types of cases, the jury is relatively more vulnerable to resorting to improper propensity reasoning. Zander does not come to grips with the specifics of the highly incriminating evidence here, which is integral to analyzing the prejudice prong of the ineffective assistance analysis. *See id.*, ¶¶39-42; *Strickland*, 466 U.S. at 695-96.

## CONCLUSION

¶56 For all of these reasons, we affirm the judgments of conviction and the circuit court's denial of Zander's postconviction motion.

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.